CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, D/B/A CAROLINAS MEDICAL CENTER; CHARLOTTE INSTITUTE OF REHABILITATION AND UNIVERSITY HOSPITAL; CAROLINA MEDICORP, INC.; FORSYTH MEMORIAL HOSPITAL, INC.; MEDICAL PARK HOSPITAL, INC.; DUKE MEDICAL CENTER; HIGH POINT REGIONAL HOSPITAL, INC.; MEMORIAL MISSION HOSPITAL, INC.; MOSES H. CONE MEMORIAL HOSPITAL; AND NORTH CAROLINA BAPTIST HOSPITALS, INC. v. NORTH CAROLINA INDUSTRIAL COMMISSION AND JAMES J. BOOKER, J. HAROLD DAVIS AND J. RANDOLPH WARD, IN THEIR OFFICIAL CAPACITIES AS ITS CHAIRMAN AND MEMBERS

No. 60PA93

(Filed 6 May 1994)

1. **State § 22 (NCI4th) — state commission and members — invalid regulation — sovereign immunity inapplicable**

   The doctrine of sovereign immunity did not authorize the dismissal of plaintiff hospitals' complaint alleging that defendant Industrial Commission and its members, in excess of their statutory authority, adopted an invalid regulation.

   **Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 67-69; States, Territories, and Dependencies §§ 104-107.**

CHARLOTTE-MECKLENBURG HOSPITAL AUTH. v. N.C. INDUSTRIAL COMM.

[336 N.C. 200 (1994)]

2. **Declaratory Judgment Actions § 5 (NCI4th)— validity of Industrial Commission rule — exhaustion of administrative remedies not required**

Plaintiff hospitals were not precluded from seeking a declaratory judgment of the validity of an Industrial Commission rule pertaining to hospital charges for employees in workers' compensation cases on the ground that they failed to exhaust their administrative remedies since the Workers' Compensation Act only provides for hearings, awards, and review of awards in disputes between employees and employers with respect to specific claims for compensation and does not address challenges to rules and regulations promulgated by the Commission pursuant to the Act, and the Commission did not respond to plaintiffs' letter requesting an administrative hearing.

**Am Jur 2d, Declaratory Judgments §§ 90-92.**

3. **Declaratory Judgment Actions § 13 (NCI4th) — hospital charges for workers' compensation patients — validity of Industrial Commission rule — justiciable controversy**

Plaintiff hospitals stated a controversy justiciable under the Declaratory Judgment Act as to the validity of a *per diem* rule adopted by the Industrial Commission for hospital charges for services rendered to employees in workers' compensation cases and the concomitant repeal of the Blue Cross and Blue Shield of North Carolina rule, although the Commission has not yet refused to allow charges above the *per diem* rate, where plaintiffs alleged that they would sustain losses under the *per diem* reimbursement plan, and plaintiffs predict that, if denied the declaratory and injunctive relief sought, they will appeal the disallowed charges on a case-by-case basis for review by the Commission and then by the courts.

**Am Jur 2d, Declaratory Judgments §§ 68-88.**

4. **Master and Servant § 75 (NCI3d) — workers' compensation — hospital charges — review by Industrial Commission**

In enacting N.C.G.S. §§ 97-25, 97-26, and 97-90(a), the legislature intended (1) that medical compensation, including, *inter alia*, hospital services provided by the employer, ordered by the Industrial Commission, provided pursuant to emergencies, or chosen by the employee, subject to the approval of

the Commission, be limited by the terms and conditions contained in § 97-25; (2) that such medical compensation be reasonably required to effect a cure or give relief or tend to lessen the period of disability; and (3) that the employer not be charged more than the employee would have been had the employee paid for the services. Furthermore, the Commission's authority under § 97-90(a) is limited to review and approval of hospital charges to ensure, first, that the employer is charged only for those reasonably required services, and, second, that the employer is not charged more for such services than the prevailing charge for the same or similar hospital service in the same community.

**Am Jur 2d, Workers' Compensation §§ 56, 57.**

5. **Master and Servant § 75 (NCI3d) — workers' compensation — hospital charges — per diem rule invalid**

A *per diem* rule adopted by the Industrial Commission for reimbursement of hospital charges for services rendered to workers' compensation patients is inconsistent with the "prevailing charge" standard of N.C.G.S. § 97-26 and thus exceeds the Commission's statutory authority to review and approve such charges where the *per diem* rates are set for each hospital by establishing the average daily hospital charge for only five categories of inpatient services; charges for both similar and dissimilar hospital services will be averaged; the Commission will disapprove charges for reasonably required services, not because the hospital charged the patient more than other patients in the same category for the same or similar services, but because the hospital provided the patient with services that differed from the services provided on average to other patients in the same category; and the Commission will thus relieve the employer of its mandated liability for medical compensation.

**Am Jur 2d, Workers' Compensation §§ 56, 57.**

6. **Master and Servant § 75 (NCI3d) — workers' compensation — hospital charges — validity of repeal of BCBSNC rule**

The Industrial Commission did not exceed its statutory authority to review and approve hospital charges for medical compensation provided workers' compensation patients when

it repealed the Blue Cross and Blue Shield of North Carolina rule.

**Am Jur 2d, Workers' Compensation §§ 56, 57.**

On discretionary review pursuant to N.C.G.S. § 7A-31 prior to a determination by the Court of Appeals of a judgment entered on 13 November 1992 by Bailey, J., in the Superior Court, Wake County, allowing plaintiffs' motion for judgment on the pleadings. Heard in the Supreme Court 10 May 1993.

*Turner Enochs & Lloyd, P.A., by Wendell H. Ott and Laurie S. Truesdell; and Womble Carlyle Sandridge & Rice, by Roddey M. Ligon, Jr., Anthony H. Brett, and Dale E. Nimmo, for plaintiff-appellees.*

*Michael F. Easley, Attorney General, by Isham B. Hudson, Jr., Senior Deputy Attorney General, for defendant-appellants.*

WHICHARD, Justice.

The primary question is whether adoption of a *per diem* reimbursement rule and concomitant repeal of the Blue Cross and Blue Shield of North Carolina rule exceeded the North Carolina Industrial Commission's statutory authority to review and approve hospital charges for services rendered to patients entitled to care under the Workers' Compensation Act, N.C.G.S. Chapter 97 (1991) ("Act"). For reasons hereinafter stated, we hold that adoption of the *per diem* rule exceeded the Commission's statutory authority, but that repeal of the Blue Cross Blue Shield rule did not.

## I.

The General Assembly enacted the Act in 1929 to both "provide swift and sure compensation to injured workers without the necessity of protracted litigation," and to "insure[ ] a limited and determinate liability for employers." *E.g., Rorie v. Holly Farms,* 306 N.C. 706, 709, 295 S.E.2d 458, 460 (1982).

The philosophy which supports the Work[ers'] Compensation Act is "that the wear and tear of human beings in modern industry should be charged to the industry, just as the wear and tear of machinery has always been charged. And while such compensation is presumably charged to the industry, and consequently to the employer or owner of the industry, even-

tually it becomes a part of the fair money cost of the industrial product, to be paid for by the general public patronizing such products."

*Vause v. Equipment Co.*, 233 N.C. 88, 92, 63 S.E.2d 173, 176 (1951) (quoting *Cox v. Kansas City Refining Co.*, 108 Kan. 320, 195 P. 863 (1921) ); *see also Barber v. Minges*, 223 N.C. 213, 216, 25 S.E.2d 837, 839 (1943) ("The primary purpose of legislation of this kind is to compel industry to take care of its own wreckage.").

The basic operating principle of the Act is that an employee is automatically entitled to certain benefits whenever he suffers either a personal injury by accident occurring in the course of the employment and arising out of it, or incurs an occupational disease. Those benefits include both wage-based disability and medical compensation. "Medical compensation" includes hospital services "as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will lessen the period of disability." N.C.G.S. § 97-2(19) (1991). "Medical compensation shall be provided by the employer." N.C.G.S. § 97-25 (1991). Medical compensation may be ordered by the Commission if not provided by the employer. *Id.* The pecuniary liability of the employer therefor "shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person." N.C.G.S. § 97-26 (1991). "[C]harges of hospitals for medical compensation . . . shall be subject to the approval of the Commission." N.C.G.S. § 97-90(a) (1991). The General Assembly created the Industrial Commission, *see* N.C.G.S. § 97-77, to administer the provisions of the Act, *Hanks v. Utilities Co.*, 210 N.C. 312, 319, 186 S.E. 252, 257 (1936), and authorized the Commission to "make rules, not inconsistent with [the Act], for carrying out the provisions [thereof]." N.C.G.S. § 97-80(a) (1991).

On 1 June 1992 the Industrial Commission announced that hospital charges for medical compensation rendered on or after 1 January 1993 would be approved, pursuant to N.C.G.S. § 97-90(a), under two alternative rules: a pre-existing fee schedule, which provided reimbursement according to a published schedule of uniform charges for inpatient services, and a *per diem* methodology. Charges in excess of these fees so scheduled or calculated would not be approved unless the hospital received prior approval thereof, or upon appeal to the full Commission.

CHARLOTTE-MECKLENBURG HOSPITAL AUTH. v. N.C. INDUSTRIAL COMM.

[336 N.C. 200 (1994)]

In a memorandum dated 18 March 1992, the Commission described the *per diem* rule: the *per diem* "rate" would be set for each hospital by establishing the average daily hospital charge for five categories of inpatient services rendered to workers' compensation patients. Excluding any charges for treatment or services rendered to workers' compensation patients which are not paid or payable under the law, Category I aggregates all general, medical, and surgical charges, including rehabilitation, rendered to workers' compensation patients other than those covered by Categories II and III. Category II aggregates all intermediate or intensive care charges for medical intensive care unit or surgical intensive care unit services, including cardiac care, rendered to workers' compensation patients. Category III aggregates high cost specialty unit charges such as those for burn units, dialysis units, heart surgery or other specialty units. Category IV aggregates pain therapy care charges for pain therapy services, and Category V aggregates psychiatric care charges for psychiatric services rendered to workers' compensation patients. The first-year base *per diem* charge would be calculated for each category of cases by dividing the total workers' compensation inpatient charges for each separate category by the total number of workers' compensation inpatient days in each category for the most recent and complete fiscal year preceding the effective date, 1 January 1993. The resultant quotient, after adjustment for inflation by a factor equal to the Hospital Market Basket Index's annualized medical cost indicator for the South Atlantic Region, would be the *per diem* rate chargeable for such category during the first year. In subsequent years, that base year *per diem* would be adjusted for inflation by the Hospital Market Basket Index's indicator for the most recent year, not by an individual hospital's experience.

Further, the Commission advised, the *per diem* reimbursement system would replace a reimbursement rule in effect since 1 January 1990 whereby the Commission, furnished with a list of normal charges for services for that hospital by Blue Cross and Blue Shield of North Carolina, Inc. ("BCBSNC"), would approve charges for services rendered a workers' compensation patient which were the same as those for a BCBSNC patient.

Plaintiffs, a group of not-for-profit hospitals, addressed the Commission by letter on 14 July 1992, requesting an administrative forum by which they could "contest the regularity of the procedures used to adopt [the above] changes and the legal authority of the

Commission to adopt or enforce a Per Diem or a Hospital Fee Schedule reimbursement system." The Commission did not respond to this letter.

Proceeding under the Declaratory Judgment Act, N.C.G.S. §§ 1-253 to -267 (1983 & Supp. 1992), plaintiff hospitals then instituted this action in the Superior Court, Wake County, alleging that the Commission's actions in terminating the BCBSNC option and adopting the *per diem* option (1) failed to comply with applicable rulemaking procedures; (2) were arbitrary and capricious; (3) exceeded the Commission's statutory authority and were inconsistent with the Act, which provides that an employer's liability for medical services "shall be limited to such charges as prevail in the same community for similar treatment of injured persons"; and (4) deprived plaintiff hospitals of property without due process of law. Plaintiff hospitals requested that the court, pursuant to the Declaratory Judgment Act, declare the actions of the Commission null and void and enjoin the Commission from establishing or enforcing a reimbursement methodology for approval of inpatient hospital service charges except for the purpose of limiting such charges to the statutory standard contained in N.C.G.S. § 97-26, so that plaintiffs would be paid for inpatient hospital services provided to workers' compensation patients on the basis of the same schedule of charges applicable to the general patient population.

The trial court heard the case without a jury. It concluded that it had personal and subject matter jurisdiction pursuant to the Declaratory Judgment Act. It found that the Commission's actions exceeded its statutory authority to review and approve charges for hospital services based on prevailing community standards under the Act, and accordingly enjoined the Commission from implementing or enforcing the proposed changes in reimbursement options. It specifically excepted "the . . . continued use of those hospital inpatient reimbursement mechanisms in effect prior to defendants' adoption of [the *per diem* option]," including the extant fee schedule. In a subsequent order, the trial court clarified that it was enjoining both adoption of the *per diem* rule and repeal of the BCBSNC rule.

From this judgment, defendants appealed to the Court of Appeals and petitioned this Court for discretionary review prior to a determination by the Court of Appeals. On 11 March 1993, we allowed defendants' petition. We now affirm the determination that

defendants' adoption of the *per diem* rule exceeded their statutory authority, but we reverse the determination that defendants' repeal of the BCBSNC rule exceeded that authority.

## II.

We first address three jurisdictional issues brought forward by defendants. They posit that the trial court lacked subject matter jurisdiction because (1) defendants are entitled to sovereign immunity, (2) plaintiffs failed to exhaust available administrative remedies, and (3) plaintiffs did not present an actual controversy as required under the Declaratory Judgment Act. We reject these arguments and conclude that plaintiff hospitals were entitled to seek declaratory and injunctive relief under the Declaratory Judgment Act.

## A.

[1] The doctrine of sovereign immunity—that the state cannot be sued in its own courts without its consent—is firmly established in North Carolina law. *E.g., Ferrell v. Dept. of Transportation,* 334 N.C. 650, 654, 435 S.E.2d 309, 312 (1993). It is also well established that a suit against a state commission or members thereof to prevent it or them from performing official duties is a suit against the state within the meaning of this doctrine. *See, e.g., Lewis v. White,* 287 N.C. 625, 643, 216 S.E.2d 134, 146 (1975), *superseded on other grounds by statute as recognized in Corum v. University of North Carolina,* 330 N.C. 761, 786, 413 S.E.2d 276, 292 (1992); *Insurance Co. v. Gold, Commissioner of Insurance,* 254 N.C. 168, 172-73, 118 S.E.2d 792, 795 (1961); *Insurance Co. v. Unemployment Compensation Com.,* 217 N.C. 495, 500, 8 S.E.2d 619, 622 (1940).

> On the other hand, the official status of the defendants, standing alone, does not immunize them from suit. . . . "When public officers whose duty it is to supervise and direct a State agency *attempt to enforce an invalid ordinance or regulation,* or invade or threaten to invade the personal or property rights of a citizen *in disregard of law,* they are not relieved from responsibility by the immunity of the State from suit, even though they act or assume to act under the authority and pursuant to the directions of the State."

*Lewis v. White,* 287 N.C. at 643, 216 S.E.2d at 146 (quoting *Schloss v. Highway Commission,* 230 N.C. 489, 492, 53 S.E.2d 517, 519

(1949)) (emphasis added) (citation omitted) (plaintiff taxpayers alleged that the members of a State commission, in excess of their statutory authority or contrary to law, proposed a diversion of state tax funds from the purpose for which such funds were appropriated; held, doctrine of sovereign immunity does not authorize dismissal of complaint). *See also Shingleton v. State*, 260 N.C. 451, 458-59, 133 S.E.2d 183, 188-89 (1963) (individual may sue state under Declaratory Judgment Act to determine extent of easement granted to the individual by the state); *Teer v. Jordan*, 232 N.C. 48, 51, 59 S.E.2d 359, 362 (1950) (citizen-taxpayer may maintain action against members of government agency to restrain unlawful use of public funds to his injury); *Schloss v. Highway Commission*, 230 N.C. 489, 492, 53 S.E.2d 517, 519 ("courts are open" to party injured by acts of public officers that invade party's personal or property rights, and "he may there obtain prompt and adequate relief").

There is no difference in principle between an attempt to enforce an invalid regulation and the initial adoption or enactment of such a regulation; both are in excess of the authority granted the agency under the statute and invade or threaten to invade personal or property rights of a citizen in disregard of the law. We therefore hold that the doctrine of sovereign immunity does not authorize the dismissal of plaintiff hospitals' complaint alleging that defendant Commission and its members, in excess of their statutory authority, adopted an invalid regulation.

B.

[2] The next question is whether plaintiff hospitals' claim should be dismissed for failure to exhaust administrative remedies. Defendants contend that where there is an adequate and complete statutory remedy, plaintiffs are not entitled to seek nonstatutory remedies pursuant to the Declaratory Judgment Act. Defendants characterize N.C.G.S. §§ 97-83 to -86 as providing such a remedy.

In *Worley v. Pipes*, 229 N.C. 465, 50 S.E.2d 504 (1948), this Court held that the exclusive remedy of a physician to recover for services rendered to an injured employee in cases where the employer and employee are subject to the Act is by application to defendant Commission in accordance with sections 97-83 through -86 of the Act, with right of appeal to the courts for review. *Id.* at 471, 50 S.E.2d at 508. Defendants contend that *Worley* is equally applicable here, and plaintiff hospitals have not availed themselves of that exclusive remedy — *i.e.*, that plaintiffs must choose the *per*

*diem* reimbursement option; seek approval of charges for services rendered an injured worker in excess of the *per diem*; and, when denied, appeal to the full Commission for review of the disapproved charges. Only then, they argue, can plaintiffs appeal the Commission's decision to the Court of Appeals. Instead, plaintiffs requested a forum and, when ignored, immediately sought declaratory relief.

"[W]hen an *effective* administrative remedy exists, that remedy is exclusive." *Lloyd v. Babb*, 296 N.C. 416, 428, 251 S.E.2d 843, 852 (1979). "When statutory provision has been made for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive. . . . Our Court has not permitted the Declaratory Judgment Act to supplant or substitute for the specific statutory proceeding for testing a . . . statute." *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. at 173-74, 118 S.E.2d at 795-96; *see also Porter v. Dept. of Insurance*, 40 N.C. App. 376, 378-80, 253 S.E.2d 44, 46-47, *cert. denied*, 297 N.C. 455, 256 S.E.2d 808 (1979) (plaintiff collection agency was not entitled to seek a declaratory judgment in the superior court as to the validity and applicability of a regulation of the Department of Insurance prohibiting collection agencies from instituting judicial proceedings on behalf of other persons where plaintiff failed to exhaust available administrative remedies).

We agree with defendants that *Worley* is equally applicable to charges for hospital services rendered to employees in workers' compensation cases. Section 97-90(a) provides that *both* "[f]ees for . . . physicians *and* charges of hospitals for medical compensation under this Article shall be subject to the approval of the Commission." N.C.G.S. § 97-90(a) (emphasis added). "[T]he General Assembly has prescribed an adequate remedy [in N.C.G.S. §§ 97-83 through -86] by which *any matter in dispute and incident to any claim* under the provisions of the Work[ers'] Compensation Act may be determined and settled." *Worley v. Pipes*, 229 N.C. at 471, 50 S.E.2d at 508 (emphasis added).

Plaintiff hospitals, however, do not seek review of an award of any *specific claims* for compensation before defendant Commission; rather, they seek a declaratory ruling that the *per diem* reimbursement rule is invalid, and injunctive relief therefrom. Sections 97-83 through -86 only provide for hearings, awards, and review of awards in disputes between employees and employers with respect to specific claims for compensation, and do not address challenges

CHARLOTTE-MECKLENBURG HOSPITAL AUTH. v. N.C. INDUSTRIAL COMM.

[336 N.C. 200 (1994)]

to rules and regulations promulgated by the Commission pursuant to the Act.[1]

---

1. These sections provide:

**§ 97-83. In event of disagreement, Commission is to make award after hearing.**

If the employer and the injured employee or his dependents fail to reach an agreement, in regard to compensation under this Article[,] within 14 days after the employee has knowledge of the injury or death, or if they have reached such an agreement which has been signed and filed with the Commission, and compensation has been paid or is due in accordance therewith, and the parties thereto then disagree as to the continuance of any weekly payment under such agreement, either party may make application to the Industrial Commission for a hearing in regard to the matters at issue, and for a ruling thereon.

**§ 97-84. Determination of disputes by Commission or deputy.**

The Commission or any of its members shall hear the parties at issue and their representatives and witnesses, and shall determine the dispute in a summary manner. The award, together with a statement of the findings of fact, rulings of law, and other matters pertinent to the questions at issue shall be filed with the record of the proceedings, within 180 days of the close of the hearing record unless time is extended for good cause by the Commission, and a copy of the award shall immediately be sent to the parties in dispute.

**§ 97-85. Review of Award.**

If application is made to the Commission within 15 days from the date when notice of the award shall have been given, the full Commission shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award . . . .

**§ 97-86. Award conclusive as to facts; appeal; certified questions of law.**

The award of the Industrial Commission, as provided in G.S. 97-84, if not reviewed in due time, or an award of the Commission upon such review, as provided in G.S. 97-85, shall be conclusive and binding as to all questions of fact; but either party to the dispute may, within 30 days from the date of such award or within 30 days after receipt of notice to be sent by registered mail or certified mail of such award, but not thereafter, appeal from the decision of said Commission to the Court of Appeals for errors of law under the same terms and conditions as govern appeals from the superior court to the Court of Appeals in ordinary civil actions. The procedure for the appeal shall be as provided by the rules of appellate procedure.

*See also* Workers' Compensation Rules of the North Carolina Industrial Commission, Rule 407(1) (1993) ("Persons who disagree with the allowance of such fees in any case may make application for and obtain a full review of the matter before the Commission as in all other cases provided"; the published fees govern "except that in special hardship cases where sufficient reason therefor is demonstrated to the Commission, fees in excess of those so published may be allowed.").

CHARLOTTE-MECKLENBURG HOSPITAL AUTH. v. N.C. INDUSTRIAL COMM.

[336 N.C. 200 (1994)]

Nor has the General Assembly provided procedures to challenge an invalid rule or regulation in any other section of the Act.[2] Thus, the General Assembly has not provided, within the Act, an adequate remedy for plaintiffs. Nonetheless, plaintiff hospitals requested, by letter, an administrative hearing at which they could "contest the regularity of the procedures used to adopt and the legal authority of the Commission to adopt or enforce a Per Diem or a Hospital Fee Schedule reimbursement system." Defendants did not respond to the letter.

Under these circumstances we cannot hold that plaintiff hospitals were not entitled to seek relief under the Declaratory Judgment Act on the ground that they have not exhausted their administrative remedies. To the extent that *Wake County Hospital v. Industrial Comm.*, 8 N.C. App. 259, 174 S.E.2d 292 (1970), determined that an action by a nonprofit hospital which challenged the validity of a schedule of hospital charges approved by the Industrial Commission in the treatment of workers' compensation cases presents a question arising under the Act which is determinable by the Commission, it is overruled.

C.

[3] The third and final jurisdictional question is whether plaintiff hospitals have stated a controversy justiciable under the Declaratory

---

2. Compare the procedures provided in the North Carolina Administrative Procedure Act, Chapter 150B (1991), from which the Industrial Commission is exempted, N.C.G.S. § 150B-1(c)(4) (1991): an agency must submit a rule adopted by it to the Rules Review Commission before the rule can be included in the North Carolina Administrative Code. N.C.G.S. § 150B-21.8 (1991). The Commission must determine whether a rule (1) is within the authority delegated to the agency by the General Assembly, (2) is clear and unambiguous, and (3) is reasonably necessary to fulfill a duty delegated to the agency by the General Assembly. N.C.G.S. § 150B-21.9 (1991). A rule to which the Commission has objected remains under review by the Commission until the agency that adopted the rule decides not to satisfy the Commission's objections and requests in writing that the Commission return the rule to the agency, and if entered into the North Carolina Administrative Code ("NCAC"), the entry reflects the Commission's objection. N.C.G.S. § 150B-21.12(a)(2), (b) (1991). A person aggrieved by a permanent rule entered in the NCAC with an objection by the Commission based on a lack of statutory authority may file an action for declaratory judgment in Superior Court, Wake County, pursuant to the Declaratory Judgment Act; in the action the court determines whether the agency exceeded its authority in adopting the rule. N.C.G.S. § 150B-21.15(a) (1991). These procedures replaced those provided in N.C.G.S. § 150B-17 (1987) (repealed 1991), requiring that any party dissatisfied with an administrative rule or regulation petition the agency for a declaratory ruling with regard to the validity of the rule as a condition precedent to review by the courts.

Judgment Act. Section 1-264 of that act states: "This Article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered." N.C.G.S. § 1-264 (1983). Section 1-254 provides:

> Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . ., and obtain a declaration of rights, status or other legal relations thereunder.

N.C.G.S. § 1-254 (1983).

Courts have stated on numerous occasions that declaratory judgment proceedings are particularly useful in determining the rights of individuals vis-a-vis administrative agencies; a judicial determination as to the power of public regulatory agencies and the validity of their rules and regulations enables the private individual to avoid uncertainty as to his rights and duties. 22A Am. Jur. 2d *Declaratory Judgments* § 89 (1988). *See, e.g., Avery Freight Lines v. White*, 245 Ala. 618, 624, 18 So. 2d 394, 400 (1944) ("A well-known field of jurisdiction under the Declaratory Judgment Law is the adjudication of legal rights in controversy between the citizen and public officials, including members of administrative agencies, in advance of threatened and erroneous action to the injury of the party plaintiff.").

Declaratory judgments will be denied, however, where no actual controversy exists.

> An actual controversy between the parties is a jurisdictional prerequisite for a proceeding under the Declaratory Judgment Act in order to "preserve inviolate the ancient and sound juridic concept that the inherent function of judicial tribunals is to adjudicate genuine controversies between antagonistic litigants with respect to their rights, status, or other legal relations."

*Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 703, 249 S.E.2d 402, 414 (1978) (quoting *Lide v. Mears*, 231 N.C. 111, 118, 56 S.E.2d 404, 409 (1949) ). "It is not necessary for one party to have an actual right of action against another for an actual controversy to exist which would support declaratory relief. However, it is necessary that the Courts be convinced that

the litigation appears to be unavoidable." *Consumers Power v. Power Co.*, 285 N.C. 434, 450, 206 S.E.2d 178, 189 (1974).

We do not require that the challenged regulation have taken effect, only that it have been enacted or adopted by the administrative agency. *Cf. City of Raleigh v. R. R. Co.*, 275 N.C. 454, 463, 168 S.E.2d 389, 395 (1969) ("Indeed, it is unnecessary for the assailed statute to have taken effect in order to entitle one whose rights it affects to contest the same by declaratory action. However, it is well settled that the court will not entertain a declaratory action with respect to the effect and validity of a statute in advance of its enactment." (quoting 2 Walter Anderson, *Actions for Declaratory Judgments* § 621, at 1415 (2d ed. 1951) ) ). Further, we require that plaintiffs be directly and adversely affected by the regulation. *Cf. City of Greensboro v. Wall*, 247 N.C. 516, 519-20, 101 S.E.2d 413, 416 (1958) ("[T]he validity of a statute, when *directly and necessarily* involved, may be determined in a properly constituted action under [the Declaratory Judgment Act]; but this may be done only when some specific provision(s) thereof is challenged by a person who is directly and adversely affected thereby." (citations omitted) ).

Plaintiff hospitals provide inpatient care to employees who are subject to the Act. On 2 June 1992, defendant Commission adopted minutes announcing that hospital charges for services rendered after 1 January 1993 would be approved if less than or equal to the rates calculated under the *per diem* rule. Plaintiffs petitioned the Commission for a hearing on the new rule; the Commission did not respond to the letter. Plaintiffs alleged that they would receive, under the new *per diem* rule, less than the amounts they charge the general patient population; in other words, plaintiffs alleged that they would sustain losses under the *per diem* reimbursement option. Plaintiffs predict that, if denied the declaratory and injunctive relief sought, they will appeal the disallowed charges on a case-by-case basis for review by the Commission and then to the courts.

Defendants argue it is possible that litigation may not arise. They point out that they have not yet refused to allow, and might ultimately approve, charges above the *per diem* rate. Defendants refer to defendant Commission's rules which allow it to approve any given hospital charges in excess of the approved *per diem* rate when the hospital demonstrates "special hardship" therefrom.

Defendants also assert that they plan to approve the *per diem* rate even if the actual charges are less than those set *per diem*, and notwithstanding the statutory proscription against employers paying more than the prevailing charges; therefore, they argue, the hospitals will be fully reimbursed on average. Defendants predict that neither employers nor their insurance carriers will complain about paying in excess of the actual charges because they realize that the *per diem* rule will reduce costs.

These "contingencies and possibilities, however, do not make the case nonjusticiable. We do not require the plaintiff to show with absolute certainty that litigation will arise; the plaintiff must merely demonstrate to a 'practical certainty' that litigation will ensue." *Ferrell*, 334 N.C. at 656, 435 S.E.2d at 314. Plaintiffs are not required to sustain actual losses in order to make a test case; "[s]uch a requirement would thwart the remedial purpose of the Declaratory Judgment Act." *Bland v. City of Wilmington*, 278 N.C. 657, 659, 180 S.E.2d 813, 815 (1971). Plaintiff hospitals have sufficiently demonstrated a "practical certainty" that litigation will ensue. We thus hold that they have presented an actual controversy justiciable under the Declaratory Judgment Act.

III.

The substantive question presented is whether the trial court erred in determining that the Commission's adopting of the *per diem* reimbursement rule and concomitant repealing of the BCBSNC schedule exceeded its authority under the Act to review and approve hospital charges for medical compensation provided to workers' compensation patients. To answer this question, we must first clarify the scope of the Commission's authority under the statute with regard to the measure of hospital charges thereunder. *In re Community Association*, 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980) ("[T]he responsibility for determining the limits of statutory grants of authority to an administrative agency is a judicial function for the courts to perform."). That is primarily a question of statutory construction. *See Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 399, 269 S.E.2d 547, 561, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980) ("An issue as to the existence of power or authority in a particular administrative agency is one primarily of statutory construction.").

A.

The following statutory provisions are pertinent:

## § 97-2. Definitions.

(19) Medical Compensation — The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period.

## § 97-25. Medical treatment and supplies.

Medical compensation shall be provided by the employer. In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.

The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal, in which case, the Industrial Commission may order a change in the medical or hospital service.

If in an emergency on account of the employer's failure to provide the medical or other care as herein specified a physician other than provided by the employer is called to treat the injured employee, the reasonable cost of such service

shall be paid by the employer if so ordered by the Industrial Commission.

Provided, however, if he so desires, an injured employee may select a physician of his own choosing to attend, prescribe and assume the care and charge of his case, subject to the approval of the Industrial Commission.

**§ 97-26. Liability for medical treatment measured by average cost in community; malpractice of physician.**

The pecuniary liability of the employer for medical, surgical, hospital service, nursing services, medicines, sick travel or other treatment required when ordered by the Commission, shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person.

**§ 97-80. Rules and regulations . . . .**

(a) The Commission may make rules, not inconsistent with this Article, for carrying out the provisions of this Article. Processes and procedure under this Article shall be as summary and simple as reasonably may be.

**§ 97-90. Legal and medical fees to be approved by Commission; misdemeanor to receive fees unapproved by Commission . . . .**

(a) Fees for attorneys and physicians and charges for hospitals for medical compensation under this Article shall be subject to the approval of the Commission; but no physician or hospital or other medical facilities shall be entitled to collect fees from an employer or insurance carrier until he has made the reports required by the Industrial Commission in connection with the case. Unless otherwise provided by the rules, schedules, or orders of the Commission, a request for a specific prior approval to charge shall be submitted to the Commission for each such fee or charge.

(b) Any person (i) who receives any fee, other consideration, or any gratuity on account of services so rendered, unless such consideration or gratuity is approved by the Commission or such court, or (ii) who makes it a business to solicit employment for a lawyer or for himself in respect of any claim or award for compensation, shall be guilty of a misdemeanor,

and upon conviction thereof shall, for each offense, be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment not to exceed one year, or by both such fine and imprisonment.

. . . .

(e) The fees provided for in subsection (a) of this section shall be approved by the Commission no later than June 1 of the year in which the Commission exercises its authority under subsection (a) of this section, but shall not become effective until July 1 following such approval.

Defendants apparently perceive in these provisions and numerous others (*see infra*) unrelated to hospital charges but incorporating the term "reasonable," a broad grant of authority to set maximum hospital charges in order to keep charges "reasonable" and contain rising costs of medical compensation. They contend that section 97-26 is either "vague and outdated" because insurance carriers, not injured persons, now pay hospital bills, and hospitals do not charge according to the patient's "standard of living"; that it applies only to hospital services ordered by the Commission, not to hospital services voluntarily provided by the employer; or that it denominates the maximum charge per hospital service which may be set by the Commission under its broad grant of authority. According to defendants, the Commission may set rates less than the prevailing community charge described in section 97-26.

[4]   While defendants' interpretation "may be helpful and [is] entitled to . . . consideration," it is not controlling; "[i]t is the Court and not the agency that is the final interpreter of legislation." *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 211-12, 306 S.E.2d 435, 444-45 (1983). We reject defendants' interpretation of these provisions, and conclude that section 97-26 contains the correct measure for employer liability for hospital charges; the authority to approve hospital charges under section 97-90(a) is provided to ensure that hospitals do not provide services not reasonably required to effect a cure or give relief or tend to lessen the period of disability, and that hospital charges therefor do not exceed the prevailing community charge described therein.

In construing the laws creating and empowering administrative agencies, as in any area of law, the primary function of a court is to ensure that the purpose of the Legislature

in enacting the law, sometimes referred to as legislative intent, is accomplished. The best indicia of that legislative purpose are "the language of the statute, the spirit of the act, and what the act seeks to accomplish." In addition, a court may consider "circumstances surrounding [the statute's] adoption which throw light upon the evil sought to be remedied."

We should be guided by the rules of construction that statutes *in pari materia*, and all parts thereof, should be construed together and compared with each other. Such statutes should be reconciled with each other when possible, and any irreconcilable ambiguity should be resolved so as to effectuate the true legislative intent.

*Comr. of Insurance v. Rate Bureau*, 300 N.C. at 399-400, 269 S.E.2d at 561 (citations omitted).

Applying the foregoing rules, we conclude that the legislature intended (1) that medical compensation, including, *inter alia*, hospital services provided by the employer, ordered by the Commission, provided pursuant to emergencies, or chosen by the employee, subject to the approval of the Commission, be limited by the terms and conditions contained in section 97-25; (2) that such medical compensation be reasonably required to effect a cure or give relief or tend to lessen the period of disability; and (3) that the employer not be charged more than his employee would have been had the employee paid for the services. It intended, further, that the Commission's authority under the statute be limited to review and approval of hospital charges to ensure, first, that the employer is charged only for those reasonably required services, and, second, that the employer is not charged more for such services than the prevailing charge for the same or similar hospital service in the same community.

Defendants, focusing on the language of section 97-26 limiting charges to "such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person," contend that hospitals no longer charge according to standard of living, and further, that most people have health insurance; therefore, they posit, section 97-26 is "vague and outdated." We disagree; indeed, this language, read in historical context, is the key to understanding the "evils sought to be remedied."

Before the 1930s, most people did not have private health insurance; the only extensive private health plans offered direct services, usually to employees in an industry. Paul Starr, *The Social Transformation of American Medicine* 294 (1982) [hereinafter "Starr"]. Hospitals generally provided three classes of service: wards for the poor and working-class, semi-private rooms for the middle-class, and private rooms for the wealthy.[3] Starr at 159. In some communities, hospitals were segregated by race. Anne M. Dellinger, "A History of Hospitals in North Carolina," in *Hospital Law in North Carolina* 1-History, 7-History to 8-History (Anne M. Dellinger ed., 1985) [hereinafter "Dellinger"] (In Greensboro, L. Richardson Hospital, established in 1927, "remained the only facility open to blacks on a non-discriminatory basis until 1963, when Wesley Long and Cone Memorial hospitals were integrated by court order."). Physicians and hospitals could increase profits both by providing additional services and by charging according to the patient's ability to pay. *See* Starr at 291.

While "[t]he words of a statute must be taken in the sense in which they were understood . . . when the statute was enacted," this rule does not preclude a statute from applying to things and conditions not in existence at the time of enactment where the language is sufficiently broad to fairly include them. *Hedrick v. Graham*, 245 N.C. 249, 259, 96 S.E.2d 129, 136-37 (1957) (citation omitted). We find the language of the statute here sufficiently broad to include modern hospital practices; the legislature clearly intended to ensure that employers pay only for those services reasonably required to effect a cure or give relief or tend to lessen the period of disability, and that hospitals not charge employers more for the same services than they charge other patients not covered by workers' compensation. We note, for example, that the Commission now generally approves only ward and semi-private services. N.C. Industrial Commission, *Evaluation of Permanent Physical Impairment: Rating Guide and Fee Schedule for Physicians and Hospitals for Services Rendered Under the North Carolina Workers' Compensation Act* 292 (1990).

---

3. Few class distinctions could be more sharply delineated. While ward patients were attended by the hospital staff, private patients were attended by doctors of their choice. Ward and private patients usually received two different kinds of food, and ward patients were often not permitted to see friends and relatives as frequently as were private patients. Starr at 159.

Defendants next focus on the language of the phrase modifying the enumerated treatments, "when ordered by the Commission," apparently arguing that section 97-26 applies only when medical treatment is ordered by the Commission and not when the employer provides hospital services or when, in emergencies, the employee secures hospital services of his own choosing. *See* N.C.G.S. § 97-25. We also reject this argument.

We previously have decided, at least implicitly, that the pecuniary liability of the employer for medical treatment voluntarily provided is to be measured by section 97-26. In *Biddex v. Rex Mills*, 237 N.C. 660, 75 S.E.2d 777 (1953), we held that even when medical compensation is voluntarily provided by the employer, the bills must be approved based on the standard set forth in section 97-26:

A commendably large number of our employers provide prompt medical examination, first aid, and hospital care for their employees in case of accident without regard to the nature of the injury, if any, that may result. Frequently, it is purely precautionary. When liability for the medical care of an employee who has suffered an accident is voluntarily incurred by the employer, the bills therefor must be approved by the Commission before the employer can demand reimbursement from its insurance carrier. In this manner such expenditures are kept within the schedule of fees and charges adopted by the Commission [pursuant to] G.S. 97-26.

*Id.* at 664, 75 S.E.2d at 780-81. We assume that the legislature was satisfied with this interpretation, in that it has since considered and amended both sections 97-25 and 97-26 without altering it. *See Hewett v. Garrett*, 274 N.C. 356, 361, 163 S.E.2d 372, 375 (1968) ("We may assume the law-making body is satisfied with the interpretation this Court has placed upon its Work[ers'] Compensation Act [when it has convened numerous times following that interpretation and failed to make any change in the statute].").

Defendants correctly point out that the legislature did not expressly limit the pecuniary liability for medical treatment rendered pursuant to an emergency, or to the proviso allowing an employee to choose his own physician. In *Schofield v. Tea Co.*, 299 N.C. 582, 594-95, 264 S.E.2d 56, 64-65 (1980), we held that fairness requires that such medical treatment be subject to the same limitations, terms, and conditions as apply to medical treatment provided

by the employer, as set forth in section 97-25, namely, that such medical treatment be reasonably required to effect a cure, give relief, or tend to lessen the period of disability.

Similarly, fairness requires that the employers' pecuniary liability for such medical treatment also be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person, as set forth in section 97-26. The provisions of sections 97-25 and 97-26 are *in pari materia* and must be construed together.

Defendants contend, apparently in the alternative, that the legislature impliedly granted them authority to set "reasonable" hospital rates at or below the prevailing community charge described in section 97-26, so as to contain rising costs of medical compensation. *See In re Community Association*, 300 N.C. at 280, 266 S.E.2d at 654 ("The agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislative grant of authority."). We have stated that "the Legislature may . . . delegate [ratemaking] authority to an administrative officer provided it prescribes sufficiently clear standards to control his discretion." *Comr. of Insurance v. Rate Bureau*, 300 N.C. at 399, 269 S.E.2d at 561. In support of their contention that the legislature gave them the authority to set "reasonable" hospital rates, defendants rely on numerous provisions unrelated to hospital charges incorporating the term "reasonable": N.C.G.S. §§ 97-25 (providing that employers pay reasonable costs for emergency medical services provided their employee); 97-73 (providing for a schedule of reasonable charges for examinations of employees exposed to the hazard of asbestosis or silicosis, which examinations are to be conducted by physicians chosen by the Commission); 97-74 (providing for awards of costs in hearings arising out of claims for disability or death benefits, which costs are to include "a reasonable allowance for the services of members of the advisory medical committee attending such hearings"); 97-88.1 (providing for awards of attorneys' fees in hearings brought or defended without reasonable grounds); 97-90(c) (providing for approval of attorneys' fees at the time the Commission renders a decision at the hearing); and 97-100(a) (requiring that rates charged by workers' compensation insurance carriers be "fair, reasonable and adequate"). We do not perceive in these provisions the "sufficiently clear standards" necessary to establish

ratemaking authority in the Commission. *Cf., e.g.,* Public Utilities Act, N.C.G.S. §§ 62-130 to -133 (1989) (providing detailed criteria for setting rates for public utilities). We thus conclude that the legislature did not intend to delegate such authority.

While defendants' concern about the rising costs of medical compensation is valid, hospital charges not paid by the employer (as self-insurer or by the insurance carrier) are spread to other patients, or, in the case of state or municipal hospitals, to the general taxpaying public. *See* Dellinger at 12-13. Such a result conflicts with the primary purpose of the Act, *i.e.,* allocating the cost of work-related injuries first to the industry and ultimately to the consumer of the industry's products. *See, e.g., Vause v. Equipment Co.,* 233 N.C. at 92, 63 S.E.2d at 176; *Barber v. Minges,* 223 N.C. at 216, 25 S.E.2d at 839. Indeed, such allocation of cost to the employer is fundamental to the American compensation system, "largely private in structure, being a matter between employers, insurance carriers, and employees," and distinguishes it from the "typical [European] 'socialistic' schemes" in which "the government becomes the central figure." 1 Arthur Larson, *The Law of Workmen's Compensation* § 3.10, at 1-15 (1993).

> Unlike pure social-insurance plans, the American compensation system does not place the cost on the "public" as such, but on a particular class of consumers, and thus retains a relation between the hazardousness of particular industries and the cost of the system to that industry and consumers of its product.
>
> . . . [Thus,] [i]n the United States it is more precise to say that the consumer of a particular product ultimately pays the cost of compensation protection for the workers engaged in its manufacture.

*Id.* § 3.20, at 1-16.

For these reasons, we decline to adopt defendants' interpretation that the legislature intended to grant them the authority to set rates for hospital services. Rather, we conclude that the legislature intended (1) that medical compensation, including, *inter alia,* hospital services provided by the employer, ordered by the Commission, provided pursuant to emergencies, or chosen by the employee, subject to the approval of the Commission, be limited by the terms and conditions contained in section 97-25; (2) that such medical compensation be reasonably required to effect a cure

or give relief or tend to lessen the period of disability; and (3) that the employer not be charged more than his employee would have been had the employee paid for the services. We therefore hold that the Commission's authority under the statute is limited to review and approval of hospital charges to ensure, first, that the employer is charged only for those reasonably required services, and, second, that for such services the employer is not charged more than the prevailing hospital charge for the same or similar hospital service.

### B.

[5] Having determined that the Commission's authority to review and approve hospital charges is thus limited, we turn to the question of whether the *per diem* rule is consistent with the statute and results in a schedule of prevailing charges.

Defendants do not argue that the rule calculates a schedule of prevailing charges. Rather, they justify the rule as establishing "reasonable rates" to constrain rising medical costs. In the alternative, they contend that under the rule the hospitals will receive their prevailing charge "on average" over all workers' compensation patients or that such a rule is not inconsistent with the "prevailing charge" standard because the Commission can still determine, on a case-by-case basis, that charges assessed do not exceed prevailing charges.

Plaintiffs essentially respond that the rule is fatally compromised by statistical sampling and aggregation problems. We agree with plaintiffs.

Under the *per diem* rule, the Commission will disapprove prevailing charges for hospital services that are reasonably required under the statute, thereby relieving employers of their mandatory liability therefor. Thus the rule is inconsistent with the statute, and the Commission has exceeded its authority in promulgating such a rule. *See* N.C.G.S. § 97-80(a) (authorizing the Commission to "make rules, not inconsistent with this Article, for carrying out the provisions of this Article"). *Cf., e.g., States' Rights Democratic Party v. Board of Elections*, 229 N.C. 179, 186-87, 49 S.E.2d 379, 384 (1948) (" 'Administrative rules and regulations, to be valid, must be within the authority conferred upon the administrative agency. The power to make regulations is not the power to legislate in the true sense, and under the guise of regulation legislation may

CHARLOTTE-MECKLENBURG HOSPITAL AUTH. v. N.C. INDUSTRIAL COMM.

[336 N.C. 200 (1994)]

not be enacted. The statute which is being administered may not be altered or added to by the exercise of a power to make regulations thereunder.' " (quoting 42 Am. Jur. *Public Administrative Law* § 99) ).

The *per diem* "rate" would be set for each hospital by establishing the average daily hospital charge for five categories of inpatient services, discussed *supra,* rendered to workers' compensation patients. The first-year base *per diem* charge for any of the five categories is, basically, the average of the average daily patient charges over all categories of patients. Such an average daily patient charge would be calculated for each category by totaling the charges for the diverse and distinct services (line items on the hospital bill) provided a patient in that category unit,[4] then dividing that total by the number of days (or fractions thereof) spent in the hospital by the patient. The resulting quotient, the average daily patient charge, is then averaged over all patients in the category. After adjustment for inflation, this average would be the *per diem* amount chargeable for such category during the first year.[5]

We believe the legislature contemplated that the Commission calculate some average charge because it used the phrase "such charges as *prevail*" within section 97-26. Also, the section is titled "Liability for medical treatment measured by *average* cost in com-

---

4. These hospital services, medicines, supplies, and other treatment provided the patient, thus aggregated, are numerous and varied, including ambulance, emergency room, and admission services; room and board; diagnostic procedures; physical and/or occupational therapy; nursing services; laboratory services; and pharmacy services. *See, e.g.,* N.C. Industrial Commission, *Evaluation of Permanent Physical Impairment: Rating Guide and Fee Schedule for Physicians and Hospitals for Services Rendered Under the North Carolina Workers' Compensation Act* 292-97 (1990). Indeed, the Commission enumerates more than sixty different services for room and board; eight different services, with no "fee" specified, for general intensive care services; five, with no fee specified, for general coronary care services; seven, with no fee specified, for nursing services including intensive care and coronary care nursing; ten, with no fee specified, for pharmacy, including drugs, non-prescription drugs, drugs incident to radiology, intravenous therapy, etc.; more than thirteen, with no fee specified, for medical supplies, including medical, surgical, non-sterile, medical prosthetic devices, pacemaker, and intraocular lens; and more than thirty-five codes, with no fee specified, for laboratory, pathology, radiology, and nuclear medicine services. *Id.*

5. In subsequent years, that base year *per diem* would be adjusted for inflation by the Hospital Market Basket Index's indicator for the most recent year, not by an individual hospital's experience.

**CHARLOTTE-MECKLENBURG HOSPITAL AUTH. v. N.C. INDUSTRIAL COMM.**

[336 N.C. 200 (1994)]

munity." N.C.G.S. § 97-26 (emphasis added); *see Raleigh v. Bank*, 223 N.C. 286, 290, 26 S.E.2d 573, 575 (1943) ("[W]hen the heading of a section is misleading or is not borne out by the explicit language of the statute itself, it may be disregarded, but where the meaning is not clear or there is ambiguity the heading which the Legislature has adopted in enacting the statute becomes important in determining the legislative intent."). "Prevail" is defined as "be frequent," "common or widespread," or "predominate." *Webster's Third New International Dictionary* 1797 (1976). Calculating an average charge reaches, in theory, the most common, or the most frequent, or the representative charge, because it mediates the variation over sample charges.[6] Thus, within a modern hospital serving a community, the average charge assessed patients for any of the numerous, diverse services provided a patient — the line items on a hospital bill — would constitute "such charges as *prevail* in the same community for *similar* treatment of injured persons of a like standard of living when such treatment is paid for by the injured person." Indeed, within a modern hospital that charges according to a uniform rate schedule, *i.e.*, that does not price discriminate by charging patients according to their ability to pay, the uniform charge for each such line-item service would be the prevailing charge therefor.

Calculating an average camouflages variation across patients; in theory, that makes the average a prevailing charge. The *per diem* rates, however, are set by averaging charges over both similar and dissimilar hospital services. The variation camouflaged and confounded by the *per diem* rule thus arises from two sources: first, the variation in charges across the patients within the category for the same or similar hospital services, and, second, the variation in services provided patients as dissimilar, for example, as a burn and a heart-surgery patient, both Category III patients. Indeed, in any hospital that charges according to a uniform charge schedule and does not price discriminate or charge patients according to their ability to pay, the variation arises *solely* from variation in the services provided.

---

6. There are three kinds of statistical averages: the mean, median, and mode. The *per diem* is an arithmetic mean, the sum of the average daily patient charges divided by the number of charges thus summed. A median would be the charge falling midway in the distribution of sample charges. The mode would be the most frequent charge. *See generally* David W. Barnes and John M. Conley, *Statistical Evidence in Litigation* 60-61 (1986).

**CHARLOTTE-MECKLENBURG HOSPITAL AUTH. v. N.C. INDUSTRIAL COMM.**

[336 N.C. 200 (1994)]

The legislature has mandated employer liability for hospital services reasonably required to effect a cure or give relief or tend to lessen the period of disability. Under the *per diem* rule, however, the Commission will disapprove charges for such reasonably required services, not because the hospital charged the patient more than other patients in the same category for the same or similar services, but because the hospital provided the patient with services that differed from the services provided on average to other patients in the same category; the Commission will thus relieve the employer of its mandated liability for medical compensation.[7] Thus, the *per diem* rule is inconsistent with the statute. *Cf. Evans v. Times Co.*, 246 N.C. 669, 670-71, 100 S.E.2d 75, 76-77 (1957) (defendant challenged the rule applied by the Industrial Commission for the measurement of disability compensation to be allowed; held, N.C.G.S. § 97-30 required that the employee receive sixty percent of the difference between wages earned before and after the injury, and therefore the rule providing for less than sixty percent was inconsistent with the Act and invalid).

Defendants attempt to assure us that they would always approve the *per diem* rate; although some employers (or their insurance carriers) would pay more than the actual or prevailing charges for services rendered their employees, they would not challenge the *per diem*, defendants say, because they realize that employers' medical costs, viewed as a whole, would be contained. The hospitals would thus receive "on average" prevailing charges for all services rendered; therefore, the *per diem* rule is consistent with the statute.

We reject this argument. It is based on the premise that the Commission, in derogation of its statutory obligation, would review and approve hospital charges that exceeded the actual prevailing charges for services provided a patient. Our workers' compensation system is not a "one payor" system. Rather, each employer is liable for medical compensation that may be required under the statute for its employees, and chooses thereunder to either self-

---

7. N.C.G.S. § 97-90(b) requires that "[a]ny person . . . who receives any fee . . . on account of [medical services rendered under the Act], unless such consideration . . . is approved by the Commission or . . . court . . . shall be guilty of a misdemeanor." If the hospital provides services that are not reasonably required to effect a cure or give relief or tend to lessen the period of disability, the employer would not be liable therefor; however, the employee would be liable, and the hospital would be able to seek payment from the employee.

**CHARLOTTE-MECKLENBURG HOSPITAL AUTH. v. N.C. INDUSTRIAL COMM.**

[336 N.C. 200 (1994)]

insure or cover its risk through an approved workers' compensation insurance carrier, N.C.G.S. § 97-93; rates for such insurance are generally tied to the prior experience of the employer. Nor is our system serviced by "one provider"; that any hospital would receive, on average, its actual prevailing charges, based on that hospital's historical charges, would be a mere fortuity.

We recognize that the *per diem* rule would simplify the process of approval of hospital charges and that the legislature has authorized the Commission to make rules establishing processes and procedures "as summary and simple as reasonably may be." N.C.G.S. § 97-80(a). There may be some level of aggregation over some of the numerous, diverse, and distinct services provided by modern hospitals that is consistent with the statute. Aggregation to a mere five categories, however, does not suffice. *Cf.* Social Security Act, 42 U.S.C. § 1395ww (1993) (Payments to hospitals for inpatient hospital services) and regulations promulgated pursuant thereto, 42 C.F.R. §§ 412.1-412.374 (1993) (The federal agency administering Medicare and Medicaid has established 460 diagnostically related groups, and thus 460 rates to effect the Congressional mandate therein to establish prospective hospital charges for each hospital participating in the program.).[8]

Defendants finally contend that the *per diem* rule is not inconsistent with the statute because plaintiff hospitals are free to contest, on a case-by-case basis, the "reasonableness" of any approved hospital charge. Under the *per diem* rule, the hospital may appeal the approved hospital charges, first to the Chief Medical Examiner, who institutes a review of the disputed fee using the established *per diem* schedule. If the hospital disputes that determination, it may request a hearing before a Deputy Commissioner, for which it may submit expert depositions. If dissatisfied with the Deputy

---

8. The Medicare and Medicaid programs are massive medical assistance programs involving millions of Americans and billions of dollars. The cost containment system thereof, enacted pursuant to 42 U.S.C. § 1395ww, establishes a method for paying hospitals for their operating costs of inpatient hospital services on the basis of rates that are prospectively determined and that vary for each patient according to the diagnostic-related group (DRG) in which the patient is classified; direct operating costs, including wages, capital-related costs, and direct medical and nursing education costs for each participating hospital, are considered in determining the hospital-specific prospective rates for each DRG. The regulations promulgated by the Secretary are extensive and detailed. *See generally* Harvey L. McCormick, *Medicare and Medicaid Claims and Procedures* § 24, at 102 (1986).

Commissioner's order, it is entitled to review by the Full Commission upon timely application.

We again reject defendants' contention. The right to appeal the application of an invalid rule does not cure its fundamental invalidity.

We conclude, for the reasons stated, that the *per diem* rule is inconsistent with the Act and that defendants exceeded their authority in promulgating it.

## C.

[6] The final question is whether the trial court erred in determining that the Commission's repeal of the BCBSNC option exceeded its authority under the Act to review and approve hospital charges for medical compensation provided workers' compensation patients. The legislature has authorized the Commission to "make rules, not inconsistent with this Article, for carrying out the provisions of this Article." N.C.G.S. § 97-80(a). Defendants conceded in oral argument that the BCBSNC rule is consistent with the statute; they sought to replace the BCBSNC rule with the *per diem* rule, they say, to contain rising medical costs. However, plaintiff hospitals did not challenge the extant fee schedule. We cannot conclude that the BCBSNC rule is the only rule that results in a schedule of charges consistent with the statute, and we therefore hold that the trial court erred in determining that the Commission exceeded its authority by repealing that rule.

## IV.

In summary, we hold that plaintiff hospitals were entitled to seek declaratory and injunctive relief under the Declaratory Judgment Act. We hold, further, that the trial court did not err in adjudging that defendants exceeded their statutory authority in promulgating the *per diem* rule; under the rule, defendant Commission will disapprove prevailing charges for hospital services reasonably required under the Act, thus relieving the employers from mandatory liability therefor. The trial court did err, however, in adjudging that defendants exceeded their authority in repealing the BCBSNC rule; plaintiffs did not challenge the extant fee schedule, and we cannot conclude that the BCBSNC rule is the only rule consistent with the Act.

Accordingly, we affirm the determination that defendants' adoption of the *per diem* rule exceeded their statutory authority. We reverse the determination that defendants' repeal of the extant BCBSNC rule exceeded their statutory authority. We remand to the Superior Court, Wake County, for entry of a judgment consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Justice Meyer concurs in the result.