GREAT AMERICAN INSURANCE COMPANY AND HARDWARE MUTUAL INSURANCE COMPANY OF THE CAROLINAS, INC. v. CHARLES F. GOLD, COMMISSIONER OF INSURANCE; BERRY C. GIBSON, HENRY L. BRIDGERS, CHARLES F. GOLD, I. MILLER WARREN AND CLYDE C. CARTER, CONSTITUTING THE BOARD OF TRUSTEES OF THE NORTH CAROLINA FIREMEN'S PENSION FUND; THE NORTH CAROLINA FIREMEN'S ASSOCIATION; C. R. PURYEAR AND RAY E. SCOTT.

(Filed 1 March, 1961.)

**1. Insurance § 1—**

The Commissioner of Insurance is a constitutional officer of the State with authority to levy and collect certain taxes for general State purposes. G.S. 105-1, G.S. 105-228.5, G.S. 105-228.9.

**2. Firemen's Pension Fund Act—**

The Board of Trustees of the North Carolina Firemen's Pension Fund, under S.L. 1959, c. 1212, purports to be an agency of the State charged with the duty, among others, of administering moneys appropriated from the general fund of the State.

**3. State § 3a—**

An action to declare unconstitutional a provision of G.S. 105-228.5, levying a tax on certain contracts of insurance, and G.S. 118-18 *et seq.*, estab-

lishing the North Carolina Fireman's Pension Fund, and to prevent the collection of the tax and forestall expenditure by the Trustees of Funds made available by the tax, *is held* a suit against the State, since the act is to prevent a State official and agency from performing official duties.

**4. Same—**

The State is immune to suit except in instances in which it has expressly consented to be sued, and in those instances the statutory procedure authorizing suit must be followed and the remedies therein authorized are exclusive.

**5. Same:    Taxation § 38c—**

Parties subject to the tax on certain insurance policies levied by G.S. 105-228.5 may not maintain an action to have the statute declared unconstitutional, the statutory remedy of recovery of the tax after payment under protest being exclusive.

**6. Administrative Law § 3:    Constitutional Law § 10—**

An administrative board has only such authority as is properly conferred upon it by statute, and the question of the constitutionality of a statute is for the judicial branch of the government.

**7. Declaratory Judgment § 1—**

The Declaratory Judgment Act does not authorize an action to determine the validity of a taxing statute in lieu of, or in substitution for, the specific statutory procedure provided for that purpose.

**8. Injunctions § 5:    Constitutional Law § 4—**

Parties subject to the tax on certain insurance policies levied by G.S. 105-228.5 may not maintain that the enforcement of the act would result in irreparable injury to them, since, if the statute is unconstitutional such parties may recover the tax paid with interest by following the statutory procedure, G.S. 105-267, and if the statute is valid, no rate increase which could affect the volume of such parties' business would go into effect pending the final determination of the validity of the statute.

APPEAL by plaintiffs from *McKinnon, J.,* August 1960 Civil Term, of WAKE.

This appeal was docketed at the 1960 Fall Term as Case No. 458.

This is an action instituted 16 December 1959 by plaintiffs Insurance Companies pursuant to the Declaratory Judgment Act to test the validity and constitutionality of Chapters 1211, 1212 and 1273 of the Session Laws of 1959 and, in the alternative, to have Chapter 1211 construed in the event it is declared constitutional.

Plaintiffs are licensed in North Carolina to write all types of fire and lightning insurance and are engaged in this business. The defendants are Charles F. Gold, Commissioner of Insurance, the Board of Trustees of the Firemen's Pension Fund, the North Carolina Fire-

men's Association, C. R. Puryear (a regular fireman) and Ray E. Scott (a volunteer fireman).

Defendants in apt time demurred to plaintiffs' complaint. The court sustained the demurrer and dismissed the action.

Plaintiffs appealed and assigned errors.

*Joyner & Howison and Allen & Hipp for plaintiffs.*

*Attorney General Bruton, Assistant Attorney General Pullen and Taylor and Ellis for defendants.*

MOORE, J. Plaintiffs challenge the constitutionality of three Acts of the General Assembly passed at the 1959 Session. These Acts and their general provisions are as follows:

(1) S.L. 1959, c. 1211, codified as the sixth paragraph from the end of G.S. 105-228.5. This section is a part of subchapter I of Chapter 105 of the General Statutes of North Carolina.

The Act levies a tax at the rate of 1% on the gross amount of premiums collected by each insurance company on contracts of insurance applicable to fire and lightning coverage, excluding marine and automobile policies. The Act does not apply to insurance written in unprotected areas, and does not apply to any policies written by farmers' mutual assessment fire insurance companies. The tax is payable to the Commissioner of Insurance.

(2) S.L. 1959, c. 1212, entitled "North Carolina Firemen's Pension Fund." It is codified as Article 3, Chapter 118, of the General Statutes of North Carolina (G.S. 118-18 to G.S. 118-32).

This Act establishes the North Carolina Firemen's Pension Fund to provide pension allowances and other benefits for eligible firemen, both regular and volunteer. For the purpose of administering the Fund a Board of Trustees is created, consisting of the Commissioner of Insurance, the State Auditor, and three members to be appointed by the Governor. The State Treasurer is made custodian of the Fund. Appropriations are to be made by the Legislature from the State's general fund for administrative expenses. Each eligible fireman is to pay $5.00 per month into the Pension Fund. Upon retirement, eligible firemen are to draw monthly pensions in accordance with the provisions of the Act. "In no event shall the appropriation made by the General Assembly in future years exceed the amount of revenue collected from the one per cent (1%) tax on fire and lightning insurance premiums in the preceding bienniums." The office of Secretary of the North Carolina Firemen's Pension Fund is created, with an annual salary of $8,000.00

(3) S.L. 1959, c. 1273. This is an appropriation measure and is not codified.

The Act appropriates funds, in maximum amounts, from the State's general fund to the North Carolina Firemen's Pension Fund for the biennium ending June 30, 1961, for administrative expenses and State contributions to the Pension Fund. The appropriations are to be paid in amounts, in any one fiscal year, not to exceed an amount equal to 1% of the amounts collected by insurance companies on contracts of insurance applicable to fire and lightning coverage, except marine and automobile insurance, within protected areas in North Carolina in the preceding calendar year.

The complaint alleges in substance:

The three Acts are so inter-related and inter-dependant as to constitute only one piece of legislation. The legislation was divided into separate enactments in an attempt to avoid the constitutional objections inherent in the 1957 Act which purported to create a firemen's pension fund. S.L. 1957, c. 1420; *Assurance Co. v. Gold, Comr. of Insurance,* 249 N.C. 461, 106 S.E. 2d 875; *Assurance Co. v. Gold, Comr. of Insurance,* 248 N.C. 288, 103 S.E. 2d 344. The three 1959 Acts, taken together, violate the Fourteenth Amendment to the Constitution of the United States and Article I, sections 7 and 17, Article II, section 14, and Article V, sections 3 and 7, of the Constitution of North Carolina. The Acts attempt to confer a special privilege on a special class, to create an arbitrary and unreasonable classification for tax purposes, to provide non-uniform taxation, to provide for a private rather than public purpose, and to impose a tax not uniform throughout the State. The legislation was not adopted in accordance with constitutional provisions, and is vague and uncertain. Enforcement of the Acts would irreparably injure plaintiffs and they have no adequate remedy at law.

Defendants demur to the complaint on the following grounds: (1) The court has no jurisdiction of the parties or the subject matter of the action, for that (a) this is an action against the State, which has not consented to be sued in this manner, (b) plaintiffs are not interested persons, within the meaning of G.S. 1-254, in a construction of Chapters 1212 and 1273, (c) a suit under the Declaratory Judgment Act will not lie to test the validity of a tax, and (d) an advisory opinion on the correctness of an executive interpretation is sought; (2) there is a misjoinder of parties and causes; and (3) the complaint does not state facts sufficient to constitute a cause of action.

The court below sustained the demurrer and dismissed the action. The judgment assigns the following reasons for the dismissal of the action (numbering ours) : (1) "This is an action against the State of

North Carolina to restrain or avoid the collection of a tax, and this court is without jurisdiction over the subject matter of the action, the State of North Carolina not having permitted itself to be sued in this manner and there being other remedies provided by law for the adjudication of plaintiffs' cause of action," and (2) "the complaint fails to state a cause of action against the defendants" of which the court has jurisdiction.

The Commissioner of Insurance is a constitutional officer of the State and a member of the Council of State. Art. III, sections 13 and 14, Constitution of North Carolina. Among the duties imposed upon him as such official is the levying and collecting of certain taxes to "provide revenue for the necessary uses and purposes of the government and State of North Carolina." G.S. 105-1; G.S. 105-228.5; G.S. 105-228.9. With respect to the assessment and collection of such taxes "the Commissioner of Insurance is . . . given the same power and authority as is given to the Commissioner of Revenue . . . ." G.S. 105-228.9. The taxes to be collected by the Commissioner of Insurance for general State purposes are set out in G.S. 105-228.5. S.L. 1959, c. 1211, the validity of which is challenged in this action, was made a part of G.S. 105-228.5, and purports to be a tax for general fund purposes of the State.

The Board of Trustees of the North Carolina Firemen's Pension Fund, under S.L. 1959, c. 1212, purports to be an agency of the State charged with the duty, among others, of administering moneys appropriated from the general fund of the State.

The acts of the Commissioner of Insurance and the Trustees of the North Carolina Firemen's Pension Fund, of which plaintiffs complain, if performed, would be performed in their official capacities. The purpose of this suit is to have the challenged legislation declared invalid, prevent a collection of the tax by the Commissioner, and forestall expenditure by the Trustees of funds made available by reason of the tax. In other words, it is sought to prevent a State official and agency from performing official duties. In essence, it is a suit against the State. *Buchan v. Shaw, Comr. of Revenue,* 238 N.C. 522, 78 S.E. 2d 317; *Insurance Co. v. Unemployment Commission,* 217 N.C. 495, 8 S.E. 2d 619; *O'Neal v. Wake County,* 196 N.C. 184, 145 S.E. 28; *Rotan v. State,* 195 N.C. 291, 141 S.E. 733.

"It is axiomatic that the sovereign cannot be sued in its own courts or in any other without its consent and permission. Except in a limited class of cases the State is immune against any suit unless and until it has expressly consented to such action. . . . An action against a commission or board created by statute as an agency of the State where the interest or rights of the State are directly affected

is in fact an action against the State." *Insurance Co. v. Unemployment Compensation Commission, supra.* The State is immune from suit unless and until it has expressly consented to be sued. It is for the General Assembly to determine when and under what circumstances the State may be sued. When statutory provision has been made for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive. The right to sue the State is a conditional right, and the terms prescribed by the Legislature are conditions precedent to the institution of the action. *Kirkpatrick v. Currie, Comr. of Revenue,* 250 N.C. 213, 108 S.E. 2d 209; *Duke v. Shaw, Comr. of Revenue,* 247 N.C. 236, 100 S.E. 2d 506; *Insurance Co. v. Unemployment Compensation Commission, supra; Rotan v. State, supra.*

The challenged Acts, insofar as they affect the plaintiffs, primarily involve the taxing provisions of S.L. 1959, c. 1211, which have been incorporated in G.S. 105-228.5, designed to provide revenue for the State's general fund. G.S. 105-228.5 and G.S. 105-267 are parts of the same chapter and subchapter of the General Statutes, and G.S. 105-267 provides, in part: "No court of this State shall entertain a suit of any kind brought for the purpose of preventing the collection of any tax imposed in this subchapter." It then provides that a person having a valid defense to the enforcement of the collection of a tax may pay under protest, demand refund, and upon refusal institute an action to recover the tax paid. If the taxpayer prevails, the tax "shall be refunded by the State." This procedure is available to plaintiffs and is exclusive.

We are not unmindful of the provision for administrative review (G.S. 105-241.2; G.S. 105-241.3). Quaere: Does a quasi-judicial board of the executive branch of government have jurisdiction to pass upon the constitutionality of a statute? Administrative boards have only such authority as is properly conferred upon them by the Legislature. The question of constitutionality of a statute is for the judicial branch. 16 C.J.S., Constitutional Law, s. 92, p. 293.

It is true that a person "whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder" by suit pursuant to the Declaratory Judgment Act. G.S. 1-254. Plaintiffs undertake to invoke this provision of the Declaratory Judgment Act in the case at bar. But the controversy, if there is a controversy in the instant action, must be of the type a declaratory judgment can settle. Our Court has not permitted the Declaratory Judgment Act to supplant or substitute for the specific statutory proceeding for

testing a tax statute. *Development Co. v. Braxton,* 239 N.C. 427, 79 S.E. 2d 918; *Buchan v. Shaw, Comr. of Revenue, supra; Insurance Co. v. Unemployment Compensation Commission, supra.*

Plaintiffs allege that they will suffer irreparable injury if the Acts in question are enforced, and that they have no adequate remedy at law. In the light of what has been said in preceding paragraphs, we are at a loss to understand how these allegations apply in an action of the type here presented. Even so, the factual allegations do not support these general conclusions. Plaintiffs allege that the Commissioner of Insurance and the North Carolina Fire Insurance Rating Bureau will take no action to permit the 1% tax to be reflected in insurance rates until the validity and constitutionality of the statute has been determined. If so, the plaintiffs may pay the tax and upon recovery by proper procedure *must be* repaid by the State with interest. G.S. 105-267. Plaintiffs will then be required to account to no one for the funds thus recovered. Since there will be no rate increase pending final determination of the question, the tax could not affect the volume of plaintiffs' business. Certainly G.S. 105-267 furnishes a full and adequate legal remedy.

It is true that this Court ruled upon the constitutionality of the 1957 North Carolina Firemen's Pension Fund Act (S.L. 1957, c. 1420) in a suit instituted under the Declaratory Judgment Act (G.S. 1-253 *et seq.*). *Assurance Co. v. Gold, Comr. of Insurance, supra.* The situation there presented is easily distinguished. Under the 1957 Act the majority of the Board of Trustees was not elected by a State agency, the duties of the Commissioner of Insurance were only ministrant in character and the funds to be received and transmitted by him did not belong to the State and the State had no interest in, or control of, such funds. So the rights and interest of the State were not directly affected. The action was not against the State. The Act had no provision for the refund of payments in the event the assessments were paid under protest and the Act was later declared unconstitutional. The action was not one to test a tax statute, since the assessments involved did not affect the rights, interests or purposes of the State.

The questions involved on this appeal are purely procedural. We are not to be understood to have intimated or expressed herein any opinion as to whether or not the three Acts are a single piece of legislation, or whether or not they, or either of them, are valid and constitutional. These matters are for another day should plaintiffs elect to proceed as provided by statute.

The judgment below is

Affirmed.