W. L. WOODARD AND M. B. MOREY, ON BEHALF OF THEMSELVES SEVERALLY AND JOINTLY AND ALL OTHERS SIMILARLY SITUATED, v. CARTERET COUNTY, NORTH CAROLINA; A. B. COOPER, CHAIRMAN, GEORGE D. PHILLIPS, MOSES HOWARD, E. W. DOWNUM AND STATON MOORE, THE BOARD OF COUNTY COMMISSIONERS OF CARTERET COUNTY; RAYMOND T. EDWARDS, CHAIRMAN, FRANK A. CASSIANO AND CLIFFORD R. TILGHMAN, CONSTITUTING THE BOARD OF ELECTIONS OF CARTERET COUNTY, NORTH CAROLINA; AND THOMAS WADE BRUTON, ATTORNEY-GENERAL OF THE STATE OF NORTH CAROLINA.

(Filed 12 April, 1967.)

**1. Declaratory Judgment Act § 1—**

The Uniform Declaratory Judgment Act affords an appropriate method for the determination of controversies relative to the construction and validity of a statute, provided there is an actual or justiciable controversy between the parties in respect to their rights under the statute.

**2. Pleadings § 12—**

The office of a demurrer is to test the sufficiency of a pleading, admitting for the purpose the truth of factual averments well stated and such relevant inferences as may be reasonably deduced therefrom, construing the pleading liberally with a view to substantial justice between the parties, but the demurrer does not admit legal inferences or conclusions. G.S. 1-151.

**3. Declaratory Judgment Act § 1—**

If the complaint in a proceeding under the Declaratory Judgment Act states a justiciable controversy and all persons who have a substantial and legal protectible interest in the subject matter of the litigation are made parties, a demurrer should not be sustained, even though plaintiffs may not be entitled to the relief sought, since in such instance the court is not concerned with whether plaintiffs have a right to the relief demanded but only whether plaintiffs are entitled to a declaration of their rights with respect to the matters alleged.

**4. Elections § 2—　Complaint held to state cause of action under Declaratory Judgment Act to determine validity of apportionment for election of county commissioners.**

Plaintiffs, citizens and residents of the county, brought this action for a declaratory judgment on behalf of themselves and all similarly situated against the county and the county board of commissioners, the county board of education, the individual members of the said boards, and the Attorney General, to have declared unconstitutional Chapter 1043 of the Session Laws of 1963 and Chapter 723 of the Session Laws of 1965, alleging that the Acts were unconstitutional in that the division of the county into districts for the purpose of nominating candidates for the office of commissioner were so unequal as to constitute improper apportionment and unequal representation, and that the provisions of the 1965 statute extending the terms of office of the members of the board of county commissioners exceeded the constitutional authority of the General Assembly, and prayed that the court direct primary and general elections be held immediately to elect county commissioners in the county. *Held:* The complaint states a justiciable controversy in which all necessary persons were made parties, and demurrer was improvidently sustained.

APPEAL by plaintiffs from a judgment entered by *Parker (Joseph W.), J.,* at the June 1966 Civil Session of CARTERET, sustaining a demurrer to the complaint and dismissing the action with the costs to be paid by plaintiffs. Docketed and argued as Case No. 115, Fall Term 1966. Docketed as Case No. 123, Spring Term 1967.

This is an action brought by plaintiffs, citizens and residents of Carteret County, on behalf of themselves severally and jointly and on behalf of all others similarly situated, under the provisions of the North Carolina Declaratory Judgment Act. G.S. 1-253 *et seq.*

Defendants are Carteret County, the members of its Board of County Commissioners, the members of its Board of Elections, and the Attorney General of the State of North Carolina, who was made a party pursuant to the provisions of G.S. 1-260.

Plaintiffs seek to have declared unconstitutional two Acts of the North Carolina General Assembly, to wit: Ch. 1043 of the Session Laws of 1963 entitled, "An Act to Provide for the Nomination and Election of the Board of County Commissions *(sic)* of Carteret County," and Ch. 723 of the Session Laws of 1965 entitled, "An Act to Amend Chapter 1043, Session Laws of 1963, Relating to the Nomination and Election of the County Commissioners of Carteret County," and for an order of court declaring the present Board of County Commissioners of Carteret County to be unlawfully and improperly constituted, and further for an order of court directing primary and general elections to be held immediately to elect five County Commissioners from Carteret County pursuant to law. The relief demanded is based upon the Fourteenth Amendment to the United States Constitution, which guarantees to plaintiffs due process of law and equal protection under the law.

Ch. 1043 of the 1963 Session Laws is entitled, "An Act to Provide for the Nomination and Election of the Board of County Commissions *(sic)* of Carteret County." The Act established four political districts in Carteret County and provided for the election of five members of the Board of County Commissioners. It became effective beginning with the 1964 primary. Under its provisions, candidates are nominated in the primary by the qualified voters of their respective districts. At the general election, the vote is county-wide. The term of office established by the Act was two years, to begin the first Monday in December, 1964. The complaint alleges in substance: Pursuant to the provisions of this Act, the defendants herein designated the "Board of County Commissioners of Carteret County" were nominated in their respective districts and elected in the general election following, and assumed the office of County Commissioners in December, 1964.

The complaint alleges that the Board of County Commissioners of Carteret County procured the enactment by the General Assembly of North Carolina of Ch. 723 of the 1965 Session Laws to amend Ch. 1043 of the 1963 Session Laws. It made certain changes in the geographical boundaries of the political districts established by the 1963 Act, changed the term of office of members of the Board of County Commissioners of Carteret County from two to four years, effective as of the 1968 general election, and extended the terms of office of the members of the Board elected in 1964 for two additional years.

Plaintiffs allege that under the provisions of the above Acts, according to the last official United States Census, District 1, which is authorized two Commissioners, has a population of 13,556 or 43.81 per cent of the total county population, District 2 has a pop-

ulation of 4,429 or 14.31 per cent of the county population, District 3 has a population of 7,219 persons or 23.33 per cent of the county population, and that District 4 contains 5,736 persons or 18.54 per cent of the county total. They allege that this is improper apportionment under which the vote of a resident of District 2 is 1.63 times greater than that of a resident of District 3. Plaintiffs' complaint is directed to the alleged unequal representation or improper apportionment resulting from the above two Acts of the General Assembly, thereby allegedly depriving them of due process of law and equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution, and further to the extension of the terms of office of the members of the Board of County Commissioners.

Paragraph 12 of the complaint alleges:

"That an action was instituted by the plaintiffs herein in the United States District Court for the Eastern District of North Carolina against the defendants herein named for causes as hereinabove set forth, said action being predicated upon the Federal Declaratory Judgment Act, 28 U.S.C. 2201-2202, to which complaint the defendants County Commissioners and County Board of Elections answers and did file, as an element of their answer, a resolution of the County Board of Commissioners adopted at their regular meeting on the first Monday in February, 1966, which resolution, in effect, found that the previous apportionment of commissioner districts in Carteret County were denied equal representation on the Board of County Commissioners and that, further, said defendants, County Board of Commissioners, redistricted said county, creating new districts. That said resolution has been made a part of the minutes of the defendants, County Board of Commissioners, which minutes are, by reference, incorporated herein and made a part hereof."

The alleged minutes are not in the record before us.

Paragraph 13 of the complaint alleges:

"That the said Commissioners as named herein are still holding office and, despite the fact that they have found themselves to have been elected under improperly created districts, they are still attempting to hold office accordingly."

On motion of the defendants, with the exception of the Attorney General of North Carolina, Bone, J., struck out paragraph 14 of the complaint, which alleges:

"That the said action filed in the United States District Court for the Eastern District of North Carolina has resulted in an opinion and order by the Hon. John D. Larkins, Jr., District Judge, copy of which is attached hereto and, by reference, made a part hereof and marked "Exhibit A," and that the said Judge has directed to be placed before the Superior Court of Carteret County, North Carolina, for a determination in accordance with the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, this cause. The Court further ordered that the Court shall retain jurisdiction until such time as a final order can be entered in the State court system (North Carolina). Therefore, the status of the defendants, County Commissioners, has not been determined and is still undetermined."

Plaintiffs did not except to Judge Bone's order.

Defendants, other than the Attorney General, filed a demurrer to plaintiffs' complaint. At the June, 1966 Session of the Superior Court for Carteret County, the court entered an order sustaining the demurrer without stating any ground upon which his ruling was based, dismissing the action and taxing plaintiffs with the costs. Plaintiffs appealed.

*Wheatly & Bennett by Thomas S. Bennett for plaintiff appellants.*

*Hamilton, Hamilton & Phillips by Luther Hamilton, and Harvey Hamilton, Jr., for defendant appellees.*

PARKER, C.J.   G.S. 1-264 states:

"This article [Uniform Declaratory Judgment Act] is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered."

G.S. 1-254 states in relevant part:

"Any person . . . whose rights, status or other legal relations are affected by a statute . . . , may have determined any question of construction or validity arising under the . . . statute . . . , and obtain a declaration of rights, status or other legal relations thereunder."

The courts have on numerous occasions stated that the Uniform Declaratory Judgment Act furnishes a particularly appropriate

method for the determination of controversies relative to the construction and validity of a statute, provided there is an actual or justiciable controversy between the parties in respect to their rights under the statute. 22 Am. Jur. 2d, Declaratory Judgments, § 25; 26 C.J.S., Declaratory Judgments, §§ 45, 46, 47.

In *Chronicle & Gazette Pub. Co. v. Attorney General*, 94 N.H. 148, 48 A. 2d 478, 168 A.L.R. 879, the Court said:

> "A petition for a declaratory judgment is particularly appropriate to determine the constitutionality of a statute when the parties desire and the public need requires a speedy determination of important public interests involved therein."

In *Allison v. Sharp*, 209 N.C. 477, 184 S.E. 27, the Court held that the Uniform Declaratory Judgment Act affords a means of testing the validity of a statute requiring persons presenting themselves for registration to prove to the satisfaction of the registrar their ability to read and write any section of the Constitution, plaintiffs and all the people of the State being vitally affected by the statute.

G.S. 1-151 reads: "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties."

The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of factual averments well stated and such relevant inferences as may be reasonably deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader. *McKinney v. High Point*, 237 N.C. 66, 74 S.E. 2d 440.

It appears that all necessary persons have been made parties to this action by plaintiffs. Considering the allegations in the complaint, according to the established rule, they disclose the existence of a real and justiciable controversy between the parties who have a substantial and legally protectible interest in the subject matter of the litigation, and that the plaintiffs would be adversely affected by the enforcement of the challenged Acts, and that all the people of Carteret County are vitally affected by the challenged Acts as to the following questions: (1) Whether the "one man—one vote" principle announced by the United States Supreme Court in *Baker v. Carr*, 369 U.S. 186, 7 L. Ed. 2d 663, and in *Reynolds v. Sims*, 377 U.S. 533, 12 L. Ed. 2d 506, applies to representation on the Board of County Commissioners; (2) if so, whether the apportionment accomplished in Carteret County by the 1963 and 1965 Acts meets the general standards suggested in *Roman v. Sincock*, 377 U.S. 695, 12 L. Ed. 2d 620, and other United States Supreme Court

decisions; (3) whether the North Carolina General Assembly was constitutionally authorized to extend the terms of office of members of the Board of County Commissioners of Carteret County; and (4) whether the court should direct primary and general elections to be held immediately to elect five Commissioners from Carteret County.

Sharp, J., said for the Court in *Insurance Co. v. Roberts*, 261 N.C. 285, 134 S.E. 2d 654:

> "This appeal, however, is from an order of the Superior Court sustaining a demurrer to the complaint. When a complaint alleges a *bona fide* controversy justiciable under the Declaratory Judgment Act, and it does not appear from the complaint that necessary parties are absent from the suit, a demurrer to the complaint should be overruled. The parties are entitled to a declaration of their rights and liabilities and the action should be disposed of only by a judgment declaring them."

To the same effect, *Walker v. Charlotte*, 268 N.C. 345, 150 S.E. 2d 493; 26 C.J.S., Declaratory Judgments, § 141; 22 Am. Jur. 2d, Declaratory Judgments, § 91. See *Hubbard v. Josey*, 267 N.C. 651, 148 S.E. 2d 638, which was a civil action for a declaratory judgment to determine the rights of the parties in a 20-foot-wide strip of land known as Hawthorne Lane in Irving Park in Greensboro, North Carolina. At the close of plaintiffs' evidence, the Court dismissed the action by a judgment of nonsuit. The Court in its decision set aside the judgment of nonsuit and remanded the case for a trial *de novo* and for an adjudication of the respective rights of the parties.

This is said in 22 Am. Jur. 2d, Declaratory Judgments, § 91:

> "The use and determination of demurrers in declaratory judgment actions are controlled by the same principles that apply in other cases. Nevertheless, it has frequently been stated that a demurrer is rarely an appropriate pleading for a defendant to file to a petition for declaratory judgment. Where the plaintiff's pleading sets forth an actual or justiciable controversy, it is not subject to demurrer since it sets forth a cause of action, even though the plaintiff may not be entitled to a favorable declaration on the facts stated in his complaint; that is, in passing on the demurrer, the court is not concerned with the question whether plaintiff is right in a controversy, but only with whether he is entitled to a declaration of rights with respect to the matters alleged."

The judgment entered below sustaining the demurrer and dismissing the action, with the costs to be taxed against plaintiffs, is reversed. The case is remanded to the Superior Court of Carteret County to the end that defendants may answer within 30 days after the receipt of the certificate from the Supreme Court, G.S. 1-131, and that thereafter the Superior Court of Carteret County will by judgment adjudicate the rights, status or other legal relations of the parties under the provisions of our Uniform Declaratory Judgment Act. On the demurrer we take the case as made out by the complaint. What position the defendants will take and whether or not *bona fide* controversies justiciable under our Uniform Declaratory Judgment Act will be raised by the answer, we do not know at this stage of the proceeding.

Reversed and remanded.