CAROLINAS MEDICAL CENTER, DUKE MEDICAL CENTER, FORSYTH MEMORIAL HOSPITAL, HIGH POINT REGIONAL HOSPITAL, MISSION-ST JOSEPH'S HEALTH SYSTEM, INC., MOSES H. CONE MEMORIAL HOSPITAL, THE NORTH CAROLINA BAPTIST HOSPITALS, INC., UNIVERSITY HOSPITAL, WAKE MEDICAL CENTER, AND WESLEY LONG COMMUNITY HOSPITAL, MEDICAL PROVIDERS, PLAINTIFF-APPELLANTS v. EMPLOYERS AND CARRIERS LISTED IN EXHIBIT A, DEFENDANT-APPELLEES

No. COA04-707

(Filed 16 August 2005)

**Constitutional Law— administrative agency—no authority to declare statute unconstitutional**

The North Carolina Industrial Commission is an administrative agency without authority to declare statutes unconstitutional, and it erred by doing just that with a statutory revision of N.C.G.S. § 97-26(b) concerning workers' compensation payments to hospitals. Other avenues to challenge the constitutionality of the statute were not taken and there was no alternative basis for supporting the Commission's ruling.

Judge WYNN concurring.

Appeal by defendants from opinion and award entered 16 February 2004 by a panel of the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 12 January 2005.

*Ott Cone & Redpath, P.A., by Laurie S. Truesdell, Wendell H. Ott, and Melanie M. Hamilton, for plaintiff-appellants.*

*Charles R. Hassell, Jr., Root and Root, P.L.L.C., by Allan P. Root, Young Moore and Henderson P.A., by Dawn D. Raynor, for defendant-cross appellants.*

STEELMAN, Judge.

The North Carolina Industrial Commission entered an order on 18 December 2003 declaring that the provisions of N.C. Gen. Stat. § 97-26(b) as they existed from 1 July 1995 to 1 April 1996 were unconstitutional. We hold that the North Carolina Industrial commission is without authority to declare statutes of the State unconstitutional and vacate its order.

## Factual Background

On 6 May 1994, the North Carolina Supreme Court filed its decision in the Case of *Charlotte-Mecklenburg Hosp. Auth. v. North Carolina Indus. Comm'n*, 336 N.C. 200, 443 S.E.2d 716 (1994), declaring that the North Carolina Industrial Commission did not have authority under N.C. Gen. Stat. § 97-26 to require hospitals to accept payment for medical services on a *per diem* basis. In response to the questions surrounding its authority to set hospital rates leading up to the *Charlotte-Mecklenburg* decision, the Industrial Commission sought additional authority from the North Carolina General Assembly. The result of these efforts was an amendment to N.C. Gen. Stat. § 97-26. Act of April 19, 1993, ch. 679, sec. 2.3, 1993 N.C. Sess. Laws 398. As amended N.C. Gen. Stat. § 97-26(b), effective 1 October 1994, read as follows: "Hospital Fees.—Payment for medical compensation rendered by a hospital participating in the State Plan shall be equal to the payment the hospital receives for the same treatment and services under the State Plan."

At the time of this amendment to N.C. Gen. Stat. § 97-26(b), the State Plan utilized a complex diagnostic related grouping-based reimbursement system (DRG) to compute amounts due to hospitals for treatment of patients under N.C. Gen. Stat. § 135-40.4. Hospitals compute patient charges on a standard UB-92 form, which states the

amount that a patient is expected to pay for hospital services. However, under the DRG reimbursement system, the actual charges set forth in the UB-92 form are modified, based upon how efficiently a hospital provides services for patients. To the extent that a patient is hospitalized for a shorter period of time, the DRG will reward that hospital with a greater payment. Conversely, if the patient is hospitalized for a greater period of time, that hospital is penalized. The result of the DRG system is that for some patients the hospital is reimbursed more than the UB-92 amount, and in some cases, the hospital is reimbursed less than the UB-92 amount.

As the DRG system was implemented, the Administrator of the Industrial Commission began to receive complaints from the worker's compensation insurance carriers that the amount of payments approved by the Industrial Commission was exceeding the amount shown on the UB-92 forms. At some point, the Administrator directed the Industrial Commission to stop approving payments to hospitals in excess of the amounts shown on the UB-92 form. Prior to this decision, a number of payments to hospitals were approved by the Industrial Commission for an amount in excess of the amount shown on form UB-92.

Plaintiffs are hospitals that provided services to workers whose injuries were covered under the North Carolina Worker's Compensation Act (Chapter 97 of the North Carolina General Statutes). Defendants are the employers of the injured workers, or their worker's compensation insurance carriers. The parties have stipulated that all workers suffered injuries that were compensable under Chapter 97, and received treatment from the hospitals for those injuries. There was a further stipulation that in each case, the Industrial Commission approved payment to the hospital in an amount in excess of the amount shown on form UB-92. Finally, defendants stipulated that they would not challenge that

> the payment amount approved by the Industrial commission is the amount the hospital would have received under the DRG reimbursement system as implemented by the administrators of the State Health Plan for the services described by the UB-92 claims form, if those had been covered by the State Health Plan.

Defendants refused to pay the amounts approved by the Industrial Commission in excess of the amounts shown on form

UB-92. Plaintiffs sought payment for the full amount approved by the Industrial Commission. A large number of cases, involving hospital treatment provided between 1 July 1995 and 1 April 1996, were consolidated for hearing before the Industrial Commission.

In the conclusions of law of its opinion and award, the Industrial Commission ultimately concluded that the "changes to N.C. Gen. Stat. § 97-26 enacted in 1994 did not reasonably or rationally relate to the purpose of the statute and were patently unfair to the employers and their carriers who were subject to the Worker's Compensation Act, [and therefore] the statute violated the due process clause of the Constitution. U.S. CONST. amend. XIV; 16B Am Jur 2d, Constitutional Law § 912." The Commission based this ultimate conclusion on additional conclusions of law in which they determined that under the provisions of N.C. Gen. Stat. § 97-26(b) they were required to authorize payments according to the State Health Plan, and that these mandated payments were fundamentally unfair in that they were "not directly related to the actual cost of the care provided." They further concluded that the system as mandated by statute included no adequate remedy to address the individual situations where employers or their insurance carriers were required under the system to pay out "sums which were not otherwise due as payment for relevant hospital treatment and services[,]" and therefore N.C. Gen. Stat. § 97-26(b), as it was then written, "deprived employers and their carriers of property without due process of law."

The Commission ordered that "plaintiff hospitals are not entitled to receive the additional amounts approved by the Industrial Commission over and above the actual hospital charges." Commissioner Pamela T. Young dissented, asserting that the Industrial Commission had no authority to determine the constitutionality of acts of the General Assembly.

From this opinion and award, plaintiffs appeal, asserting that the Industrial Commission lacked authority to declare an act of the General Assembly unconstitutional, and erred in doing so. Defendants purported to cross-appeal asserting additional bases that would support the Commission's decision in favor of defendants.

## Discussion of Legal Issues Presented

In plaintiffs' first argument they contend that the Full Commission erred in ruling that it had the authority to decide the constitutionality of former N.C. Gen. Stat. § 97-26(b). We agree.

The Industrial Commission is not a court of general jurisdiction, it is an administrative agency of the State, created by statute. *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 137, 337 S.E.2d 477, 483 (1985). It is a "well-settled rule that a statute's constitutionality shall be determined by the judiciary, not an administrative board." *Meads v. North Carolina Dep't of Agric., Food & Drug Protection Div., Pesticide Sec. (In re Pesticide Bd. File Nos. IR94-128, IR94-151, IR94-155)*, 349 N.C. 656, 670, 509 S.E.2d 165, 174 (1998); *see also State ex rel. Utilities Comm'n v. Carolina Util. Customers Ass'n*, 336 N.C. 657, 673-74, 446 S.E.2d 332, 341-42 (1994); *Gulf Oil Corp. v. Clayton*, 267 N.C. 15, 20, 147 S.E.2d 522, 526 (1966); *Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 173, 118 S.E.2d 792, 796 (1961). The Industrial Commission had no authority to pass on the constitutionality of N.C. Gen. Stat. § 97-26(b) (1994).

We note that there were at least two avenues available to defendants to properly challenge the constitutionality of the statute in a lower tribunal. They could have brought an action under the Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253 *et seq.* (2004). *Woodard v. Carteret County*, 270 N.C. 55, 60, 153 S.E.2d 809, 813 (1967) ("A petition for a declaratory judgment is particularly appropriate to determine the constitutionality of a statute when the parties desire and the public need requires a speedy determination of important public interests involved therein.") (citation omitted). Alternatively, pursuant to N.C. Gen. Stat. § 97-86 the Industrial Commission of its own motion could have certified the question of the constitutionality of the statute to this Court before making its final decision.

The Industrial Commission acknowledged this option in its decision in *Carter v. Flowers Baking Co.*, 1996 N.C. Wrk. Comp. LEXIS 5284, in which it held that "the Commission does not have the authority to find that enactments of the Legislature are unconstitutional[,]" and that:

> If the Commissioners feel strongly that a statute is unconstitutional and that it would clearly offend their oath to apply it, or that applying it would cause irreparable prejudice, or that the question would not otherwise be reviewed·in the courts, etc., the Commission "may certify questions of law to the Court of Appeals for decision and determination" [pursuant to N.C. Gen. Stat. § 97-86], which would "operate as a supersedeas except as provided in G.S. 97-86.1."

*Id.* at 11-12. The record in this matter contains no such certification. Rather, the Industrial Commission chose, contrary to its own prior decision and the established case law of this state, to declare a statute passed by the General Assembly to be unconstitutional.

The parties in their oral arguments before this Court suggested that we proceed to decide the constitutional question, even though it is not properly before us. It is not the role of the appellate courts to render advisory opinions in matters that are not properly before them. *Wiggins v. Pyramid Life Ins. Co.*, 3 N.C. App. 476, 478, 165 S.E.2d 54, 56 (1969).

There has been no petition for certiorari filed in this case. N.C. R. App. P. Rule 21. There has been no motion filed by any party requesting that we suspend the Rules of Appellate Procedure under Rule 2 and treat the appeals of appellants and appellees as a certification by the Industrial Commission under N.C. Gen. Stat. § 97-86. The record in this matter is devoid of any indication that the parties requested that the Industrial Commission certify the constitutional question to this Court.

N.C. Gen. Stat. § 97-96 allows this Court to consider questions of law certified to it by the Industrial Commission. It does not presume to allow this Court to certify matters to itself for review and consideration. The provisions of Rule 2 are discretionary, and cannot be used to confer jurisdiction upon this Court in the absence of jurisdiction. *Bromhal v. Stott*, 116 N.C. App. 250, 253, 447 S.E.2d 481, 483 (1994).

We decline to attempt to utilize Rule 2 to confer jurisdiction upon this Court in the absence of a certification from the Industrial Commission under N.C. Gen. Stat. § 97-86.

The Industrial Commission was completely without authority to declare a statute enacted by the General Assembly unconstitutional.

### Defendants' Cross-Assignments of Error

Defendants argue in cross-assignments of error (incorrectly designated a cross-appeal) that there were alternative bases supporting the Industrial Commission's opinion and award. We disagree.

First, defendants argue that N.C. Gen. Stat. § 97-26(b) (1994) was unconstitutional for uncertainty and vagueness and was an unlawful delegation of legislative power to an administrative agency. Having held that the Commission was without authority to determine the

constitutionality of N.C. Gen. Stat. § 97-26(b) (1994), we must also hold that this cross-assignment of error is without merit.

Second, defendants argue that the "legislation creating the State Teachers' and Employees' Health Plan expressly prohibits charges in excess of what hospital patients not covered by the Plan would be required to pay[,]" and that this, in turn, prohibits charges assessed under N.C. Gen. Stat. § 97-26(b) (1994) from exceeding those authorized for patients not covered by the Plan.

N.C. Gen. Stat. § 97-26(b) (1994) states: "Hospital Fees.—Payment for medical compensation rendered by a hospital participating in the State Plan shall be equal to the payment the hospital receives for the same treatment and services under the State Plan." Defendants rely on N.C. Gen. Stat. § 135-40.7 (1996), which outlines general limitations and exclusions for the State Plan, and states:

> The following shall in no event be considered covered expenses nor will benefits described in G.S. 135-40.5 through G.S. 135-40.11 be payable for:

> (8) Charges for any services with respect to which there is no legal obligation to pay. For the purposes of this item, any charge which exceeds the charge that would have been made if a person were not covered under this Plan shall, to the extent of such excess, be treated as a charge for which there is no legal obligation to pay . . . .

Defendants argue that because they were required to pay amounts for services greater than that which people not covered under the Plan would have been required to pay, under N.C. Gen. Stat. §135-40.7(8) they were only obligated for payments up to the UB-92 amounts. However, N.C. Gen. Stat. § 135-40.4 (1996) (emphasis added) states in relevant part:

> *Notwithstanding the provisions of this Article,* the Executive Administrator and Board of Trustees of the Teachers' and State Employees' Comprehensive Major Medical Plan *may contract* with providers of institutional and professional medical care and services to established preferred provider networks. . . . The Executive Administrator and Board of Trustees shall implement a refined diagnostic-related grouping or diagnostic-related grouping-based reimbursement system for hospitals as soon as practicable, but no later than January 1, 1995.

(b) As used in this section the term "preferred provider contracts or networks" includes, but is not limited to, a refined diagnostic-related grouping or diagnostic-related grouping-based system of reimbursement for hospitals.

This statute required the Plan to set up a DRG based system for preferred providers. Defendants' interpretation of N.C. Gen. Stat. § 135-40.7(8) would render N.C. Gen. Stat. § 135-40.4 inoperable. As Garry Bowman, who was qualified as an expert in hospital charges and billing procedures, testified, UB-92 charges for services in the hospital billing context do not necessarily directly correspond with the amounts the hospitals are reimbursed for those services. For this reason, "charge" is not synonymous with "payment" in Chapter 135. Defendants were "charged" the same amounts that would have been charged to individuals not covered by the Plan (and not covered by N.C. Gen. Stat. § 97-26(b) (1994)), however they were then required to reimburse plaintiffs pursuant to the negotiated rates under the Plan's DRG system. Though this result may be unfair, it is authorized by Chapters 97 and 135. N.C. Gen. Stat. § 135-40.7(8) provides defendants no relief.

Third, defendants argue this Court should hold that the decision of Thomas Bolch, then Administrator of the North Carolina Industrial Commission, "to withhold approval of DRG bills submitted to defendant payors was necessary to preserve the integrity and proper functioning of the workers' compensation system."

This argument is nothing more than a restatement of defendants' argument that N.C. Gen. Stat. § 97-26 was unconstitutional, because it violated due process. As previously discussed, this argument is not properly before this Court. In addition, to adopt this argument would require us to sanction Administrator Bolch's decision to deliberately violate an act of the General Assembly. This we refuse to do. Finally, this argument is premised upon the fallacious assumption that the bills in question were not approved by the Industrial Commission following Administrator Bolch's decision to withhold approval of bills in excess of the UB-92 amount. However, in each of the cases before the Commission, the parties stipulated that the Commission approved payment to the plaintiffs in the amount that they would have received under the DRG reimbursement system.

Defendants' cross-assignments of error are without merit. The opinion and award of the Industrial Commission is vacated.

VACATED.

Judge BRYANT concurs.

Judge WYNN concurring with separate opinion.

WYNN, Judge concurring with separate opinion.

While I agree with the majority that the Industrial Commission had no authority to pass on the constitutionality of N.C. Gen. Stat. § 97-26(b) (1994), I would treat the full Commission's Opinion and Award as a certification to this Court and address the issues on appeal.

N.C. Gen. Stat. § 97-86 (2004) provides that "[t]he Industrial Commission of its own motion may certify questions of law to the Court of Appeals for decision and determination by said Court." I would treat the Opinion and Award as a certification on the constitutionality of N.C. Gen. Stat. § 97-26(b) (19944) to this Court. A determination of the constitutionality of section 97-26(b) in the instant appeal is in the interest of judicial economy. Upon remand of this case to the Industrial Commission, the Commission will most likely immediately certify the constitutionality of this statute to this Court for determination. *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 665, 599 S.E.2d 888, 898 (2004) (in the interests of judicial economy and fairness to the parties the Supreme Court addressed the substantive issues on appeal). Furthermore, Rule 2 of the North Carolina Rules of Appellate Procedure allows us to reach the issues on appeal in the interest of judicial economy. N.C. R. App. P. 2 ("[T]o expedite decision in the public interest, either court of the appellate division may, . . . suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or *upon its own initiative*[.]" (emphasis added)).

I would decide the issues on appeal, or at the very least, remand this case to the Industrial Commission for a determination of whether the constitutional issue should be certified to this Court.