IN THE SUPREME COURT OF NORTH CAROLINA

No. 86A16

Filed 17 March 2017

IN THE MATTER OF KAY FRANCES REDMOND, by and through LINDA NICHOLS, Administratrix of the Estate of Kay Frances Redmond, Claim for Compensation Under the North Carolina Eugenics Asexualization and Sterilization Compensation Program

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 785 S.E.2d 111 (2016), dismissing an appeal from a decision and order filed on 27 April 2015 by the North Carolina Industrial Commission and remanding the matter to the Commission for transfer to the Superior Court, Wake County, pursuant to N.C.G.S. § 1-267.1(a1). On 9 June 2016, the Supreme Court allowed the State's petition for discretionary review of additional issues. Heard in the Supreme Court on 13 February 2017.

*UNC Center for Civil Rights, by Elizabeth Haddix and Mark Dorosin; and Pressly, Thomas & Conley, PA, by Edwin A. Pressly, for claimant-appellant/appellee.*

*Joshua H. Stein, Attorney General, by Elizabeth A. Fisher, Assistant Solicitor General, and Amar Majmundar, Special Deputy Attorney General, for defendant-appellant/appellee State of North Carolina.*

JACKSON, Justice.

In this case we consider whether the North Carolina Court of Appeals has jurisdiction to consider claimant's constitutional challenge to an act of the General Assembly on appeal from a final decision and order of the North Carolina Industrial

Commission. Because we conclude that the Court of Appeals has jurisdiction to reach the merits of claimant's constitutional challenge, we reverse the Court of Appeals' dismissal of claimant's appeal and remand this case to that court to consider the merits of claimant's constitutional challenge.

In 1956 claimant Kay Frances Redmond was sterilized involuntarily at the age of fourteen by order of the now-dismantled Eugenics Board of North Carolina pursuant to Chapter 224 of the Public Laws of North Carolina of 1933. *See* N.C.G.S. § 35-39 (1950) (repealed 2003). Claimant passed away in 2010. In 2013 the General Assembly established the Eugenics Asexualization and Sterilization Compensation Program (Compensation Program) to provide "lump-sum compensation" to any "claimant determined to be a qualified recipient." *Id.* § 143B-426.51 (2013). A qualified recipient was "[a]n individual who was asexualized involuntarily or sterilized involuntarily under the authority of the Eugenics Board of North Carolina in accordance with Chapter 224 of the Public Laws of 1933 or Chapter 221 of the Public Laws of 1937." *Id.* § 143B-426.50(5) (2013). More relevant to this case, a claimant was defined as "[a]n individual on whose behalf a claim is made for compensation as a qualified recipient" who was "alive on June 30, 2013."[1] *Id.* § 143B-426.50(1) (2013).

---

[1] The Compensation Program expired as provided in the 2013 enabling act, as amended in 2014. *See* [The] Current Operations and Capital Improvements Appropriations Act of 2013, ch. 360, secs. 6.18(a)-(g), 2013 N.C. Sess. Laws 995, 1019-23 (making pertinent provisions of the statutes creating the Program effective July 1, 2013, and setting an

Claimant's estate filed a claim pursuant to the Compensation Program to the North Carolina Industrial Commission (the Commission); however, the claim initially was determined to be ineligible because claimant was not alive on 30 June 2013, as required by subsection 143B-426.50(1). That conclusion was upheld following an evidentiary hearing before a deputy commissioner. On appeal to the full Commission, claimant raised a constitutional challenge to subsection 143B-426.50(1), arguing that the requirement that a claimant be alive on 30 June 2013 violates the guarantees of equal protection and due process in Article I, Section 19 of the North Carolina Constitution and the Fourteenth Amendment to the United States Constitution. The full Commission denied the claim for not meeting the subsection 143B-426.50(1) criteria, but certified the constitutional question to the Court of Appeals. In certifying the question, the Commission noted the lack of an explicit statutory framework for doing so. In contrast to N.C.G.S. § 97-86, which gives the Commission statutory authority to certify questions of law to the Court of Appeals in workers' compensation cases, the Commission observed that the statutes providing adjudicatory authority to the Commission here pursuant to the Compensation Program contain no such provision. Claimant appealed the final decision of the full Commission to the Court of Appeals.

---

expiration date of June 30, 2015, except for final adjudication of any claims still pending on that date), *as amended by* The Current Operations and Capital Improvements Appropriations Act of 2014, ch. 100, secs. 6.13(a)-(f), 2013 N.C. Sess. Laws (Reg. Sess. 2014) 328, 346-48 (adding, *inter alia*, a provision stating that the Office of Justice for Sterilization Victims also expired on June 30, 2015).

The Court of Appeals did not reach the constitutional question raised in claimant's appeal. *In re Hughes*, ___ N.C. App. ___, ___, 785 S.E.2d 111, 116 (2016).[2] Instead, the Court of Appeals held that it did not have jurisdiction to consider claimant's appeal from the full Commission because any challenge to the constitutionality of an act of the General Assembly first must be submitted to a three-judge panel of the Superior Court of Wake County pursuant to N.C.G.S. § 1-267.1(a1). *Id.* at ___, 785 S.E.2d at 116. Consequently, the Court of Appeals dismissed claimant's appeal and remanded the case to the Commission to transfer "those portions of the action[ ] challenging the constitutional validity of N.C. Gen.[ ]Stat. § 143B-426.50(1)" to Wake County for resolution by a three-judge panel. *Id.* at ___, 785 S.E.2d at 116. Both claimant and the State have appealed the Court of Appeals' dismissal of the appeal to this Court and argue that the Court of Appeals has jurisdiction to consider claimant's constitutional challenge to subsection 143B-426.50(1). We agree.

Eligibility for compensation pursuant to the Compensation Program is determined by the North Carolina Industrial Commission. N.C.G.S. § 143B-426.52(c) (2013). "[I]nitial determinations of eligibility for compensation" are made by a deputy commissioner upon review of "the claim and supporting documentation submitted on

---

[2] On appeal to the Court of Appeals, claimant's case was combined with those of two other claimants—one being Mary Lucille Hughes—who were also deemed ineligible for the Compensation Program by the Commission pursuant to subsection 143B-426.50(1). *See In re Hughes*, ___ N.C. App. at ___, 785 S.E.2d at 112.

behalf of a claimant." *Id.* § 143B-426.53(b) (2013). In determining eligibility, the Commission has "all powers and authority granted under Article 31 of Chapter 143 of the General Statutes." *Id.* § 143B-426.53(a) (2013). Article 31, Chapter 143, commonly referred to as the Tort Claims Act, states that the Commission is "constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments." *Id.* § 143-291(a) (2015). Section 143B-426.53 of the Compensation Program statutes provides for multiple stages of review within the Commission and an ultimate appeal as of right from a decision of the full Commission to the Court of Appeals "in accordance with the procedures set forth in G.S. 143-293 and G.S. 143-294." *Id.* § 143B-426.53(d)-(f) (2013).

Although the Commission acts as a court for purposes of the Tort Claims Act and for determining eligibility of claimants pursuant to the Compensation Program, *see id.* § 143B-426.53(a), the Commission's judicial power is limited, or quasi-judicial. We have determined that the Commission "is not a court with general implied jurisdiction" but "primarily is an administrative agency of the state" granted judicial power "as is necessary to perform the duties required of it by the law which it administers." *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 137, 337 S.E.2d 477, 483 (1985) (citation omitted). That judicial power clearly does not extend to consideration of constitutional questions, as it is a "well-settled rule that a statute's constitutionality shall be determined by the judiciary, not an administrative board."

*Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 670, 509 S.E.2d 165, 174 (1998); *see also State ex rel. Utils. Comm'n v. Carolina Util. Customers Ass'n*, 336 N.C. 657, 673-74, 446 S.E.2d 332, 341-42 (1994); *Gulf Oil Corp. v. Clayton*, 267 N.C. 15, 20, 147 S.E.2d 522, 526 (1966); *Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 173, 118 S.E.2d 792, 796 (1961), *overruled on other grounds by Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976).

Similar to the limited judicial power of the Industrial Commission, the North Carolina Utilities Commission is "deemed to exercise functions judicial in nature and [to] have all the powers and jurisdiction of a court of general jurisdiction as to all subjects over which the Commission has or may hereafter be given jurisdiction by law." *Carolina Util. Customers Ass'n*, 336 N.C. at 673, 446 S.E.2d at 342 (quoting N.C.G.S. § 62-60 (1989)). Such power is properly exercised "[f]or the purpose of conducting hearings, making decisions and issuing orders, and in formal investigations where a record is made of testimony under oath." *Id.* at 673, 446 S.E.2d at 342 (quoting N.C.G.S. § 62-60). When an interested party argued that this judicial power authorized the Utilities Commission to determine the constitutionality of a statute falling within the Utilities Commission's administrative purview, we concluded that "[a]s an administrative agency created by the legislature, the Commission has not been given jurisdiction to determine the constitutionality of legislative enactments." *Id.* at 674, 446 S.E.2d at 342.

Although not controlling on this Court, we note with approval the Court of Appeals' reasoning in a similar case. When the Industrial Commission determined in its opinion and award that certain changes to the Workers' Compensation Act violated the Due Process Clause of the United States Constitution, the Court of Appeals vacated the opinion and award, citing the "well-settled rule that a statute's constitutionality shall be determined by the judiciary, not an administrative board." *Carolinas Med. Ctr. v. Emp'rs & Carriers*, 172 N.C. App. 549, 553, 616 S.E.2d 588, 591 (2005) (quoting *Meads*, 349 N.C. at 670, 509 S.E.2d at 174). In reaching this holding, the court reasoned that a party has at least two avenues to challenge the constitutionality of a statute. *Id.* at 553, 616 S.E.2d at 591. First, the party asserting the constitutional challenge may bring "an action under the Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253 *et seq.* (2004)." *Id.* at 553, 616 S.E.2d at 591 ("A petition for a declaratory judgment is particularly appropriate to determine the constitutionality of a statute when the parties desire and the public need requires a speedy determination of important public interests involved therein." (quoting *Woodard v. Carteret County*, 270 N.C. 55, 60, 153 S.E.2d 809, 813 (1967))). "Alternatively, pursuant to N.C. Gen. Stat. § 97-86 the Industrial Commission of its own motion could have certified the question of the constitutionality of the statute to this Court before making its final decision." *Id.* at 553, 616 S.E.2d at 591.

Section 97-86 states: "The Industrial Commission of its own motion may certify questions of law to the Court of Appeals for decision and determination by said

Court." N.C.G.S. § 97-86 (2015). Although this provision is part of the Workers' Compensation Act, and is not implicated in the statutes creating the Compensation Program, it is instructive as to the limitations of the Commission's judicial authority. Correctly recognizing that it did not have authority to rule on claimant's constitutional challenge in this case, but acting in accord with its status as an administrative agency with a process of appeal to the Court of Appeals encompassing a broad spectrum of subject matters, *see id.* § 97-86 (providing for appeals to the Court of Appeals from final awards of the full Commission pursuant to the Workers' Compensation Act); *id.* § 143-293 (2015) (providing for appeals to the Court of Appeals from decisions and orders of the full Commission pursuant to the Tort Claims Act); *id.* § 143B-426.53(f) (providing for appeals to the Court of Appeals from decisions of the full Commission pursuant to the Compensation Program), the Industrial Commission certified the question to the Court of Appeals for judicial determination.

In addition, the North Carolina Constitution states that "[t]he Court of Appeals shall have such appellate jurisdiction as the General Assembly may prescribe." N.C. Const. art. IV, § 12(2). The General Assembly has conferred upon the Court of Appeals "jurisdiction to review upon appeal decisions . . . of administrative agencies, upon matters of law or legal inference." N.C.G.S. § 7A-26 (2015). There is no doubt that a question as to the constitutionality of an act of the General Assembly is a "matter[ ] of law or legal inference." This Court also has recognized that "[i]n 'double appeal' states, including North Carolina . . . , cases involving a substantial

constitutional question are appealable in the first instance to the intermediate appellate court." *State v. Colson*, 274 N.C. 295, 302-03, 163 S.E.2d 376, 381 (1968), *cert. denied*, 393 U.S. 1087 (1969). The General Assembly has provided specifically that "appeal as of right lies directly to the Court of Appeals" from "any final order or decision of . . . the North Carolina Industrial Commission." N.C.G.S. § 7A-29 (2015). The appeal in this case arises from a "decision and order" of the full Commission denying claimant's claim based on the application of subsection 143B-426.50(1)—the statutory provision that is the subject of claimant's constitutional question.

In its opinion below, the Court of Appeals relied on N.C.G.S. § 1-267.1(a1) to conclude that its appellate jurisdiction has been limited by the General Assembly in the context of this case. *See In re Hughes*, ___ N.C. App. at ___, 785 S.E.2d at 116. Subsection 1-267.1(a1) provides in part that "any facial challenge to the validity of an act of the General Assembly shall be transferred pursuant to G.S. 1A-1, Rule 42(b)(4), to the Superior Court of Wake County and shall be heard and determined by a three-judge panel." N.C.G.S. § 1-267.1(a1) (2015). According to North Carolina Rule of Civil Procedure 42(b)(4), when "a claimant raises such a challenge in the claimant's complaint or amended complaint in any court in this State . . . . the court shall, on its own motion, transfer that portion of the action challenging the validity of the act of the General Assembly to the Superior Court of Wake County for resolution by a three-judge panel." *Id.* § 1A-1, Rule 42(b)(4) (2015).

"Where the language of a statute is clear and unambiguous, there is no room for judicial construction[,] and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 575, 573 S.E.2d 118, 121 (2002) (alterations in original) (quoting *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974)). By the plain language of subsection 1-267.1(a1), the General Assembly confined the scope of the statute to the requirements of Rule 42(b)(4). In this case claimant filed a *claim* with the Commission pursuant to section 143B-426.52 of the Compensation Program, and not a "complaint or amended complaint in any court in this State." *See* N.C.G.S. § 1A-1, Rule 42(b)(4). Moreover, the Commission "is not a court" as contemplated in Rule 42(b)(4), but "primarily is an administrative agency of the state." *Hogan*, 315 N.C. at 137, 337 S.E.2d at 483. Consequently, subsection 1-267.1(a1), read in conjunction with Rule 42(b)(4), does not require that claimant's constitutional challenge be heard by a three-judge panel of the Superior Court of Wake County. Therefore, subsection 1-267.1(a1) does not limit the appellate jurisdiction of the Court of Appeals with respect to this matter.

That the Commission is not a court, but an administrative agency of the State with statutorily limited judicial authority, also makes distinguishable our prior reasoning in cases like *City of Durham v. Manson*, 285 N.C. 741, 743, 208 S.E.2d 662, 664 (1974) ("[I]n conformity with the well established rule of appellate courts, we will not pass upon a constitutional question unless it affirmatively appears that such

-10-

question was raised and passed upon in the court below." (italics omitted) (quoting *State v. Jones*, 242 N.C. 563, 564, 89 S.E.2d 129, 130 (1955))), and *State v. Cumber*, 280 N.C. 127, 132, 185 S.E.2d 141, 144 (1971) ("Having failed to show involvement of a substantial constitutional question which was raised and passed upon in the trial court and properly brought forward for consideration by the Court of Appeals, no legal basis exists for this appeal to the Supreme Court, and it must therefore be dismissed."). As we have established already, the Commission has no authority to decide constitutional questions, making the rule announced in these cases inapplicable to whether the Court of Appeals may consider the constitutional question raised in this case.

Inasmuch as our prior decision in *State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau* applied cases like *Manson*, *Cumber*, and *Jones* in the context of an appeal from an administrative agency, *see* 300 N.C. 381, 428, 269 S.E.2d 547, 577 (1980), that case is distinguishable from the present case because it involved an appeal from the Commissioner of Insurance's denial of a rate increase that was subject to judicial review pursuant to the Administrative Procedure Act (APA), *see id.* at 394-96, 269 S.E.2d at 559. Although petitions for judicial review of final agency decisions governed by the APA ordinarily are "filed in the superior court of the county where the person aggrieved by the administrative decision resides," N.C.G.S. § 150B-45(a) (2015), in *Rate Bureau*, appeal was taken directly from the Commissioner of Insurance to the Court of Appeals. 300 N.C. at 392, 269 S.E.2d at 557. In that case,

no constitutional challenge regarding rate-making was considered by the Court of Appeals. *See generally State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 41 N.C. App. 310, 255 S.E.2d 557 (1979). Moreover, in *Rate Bureau*, this Court reasoned:

> [T]he Commissioner's original order denying the Reinsurance Facility rate increase stated only that such rates are "unfairly discriminatory" presumably in the statutory sense. He never held that any of the statutes or actions were unconstitutional. In his brief, however, he does make vague assertions that it would be "constitutionally suspect" to interpret the statutes contrary to his findings and conclusions. He states, "The governing statutes should be construed so as to avoid serious doubts as to constitutionality."

300 N.C. at 429, 269 S.E.2d at 577.

Citing a holding by the Supreme Court of Michigan in *Shavers v. Attorney General Kelley*, 402 Mich. 554, 267 N.W.2d 72, *cert. denied*, 442 U.S. 934, 99 S. Ct. 2869 (1978), the Commissioner argued that "certain ratemaking mechanisms were constitutionally deficient in failing to provide due process." *Rate Bureau*, 300 N.C. at 429, 269 S.E.2d at 578. This Court noted:

> However, the Michigan court unquestionably based its holding on constitutional due process considerations. Indeed, the Michigan action was a declaratory judgment action specifically brought to determine the constitutionality of the Michigan No-Fault Insurance Act. The constitutional question was the basis for the action from trial court to final appellate adjudication. This is completely unlike the case before us where the record discloses no constitutional question presented or passed in the Commissioner's original order.

*Id.* at 429, 269 S.E.2d at 578.

We believe that the decision regarding the issue of a constitutional challenge before this Court in *Rate Bureau* was incorrect. When an appeal lies directly to the Appellate Division from an administrative tribunal, in the absence of any statutory provision to the contrary, *see, e.g.*, N.C.G.S. § 150B-45(a), a constitutional challenge may be raised for the first time in the Appellate Division as it is the first destination for the dispute in the General Court of Justice. As in this case, a claim made pursuant to the Compensation Program is appealed from a final decision of the Commission directly to the Court of Appeals without judicial review by a trial court. *See id.* § 143B-426.53(f).

Here, the Commission necessarily deemed claimant ineligible for the Compensation Program pursuant to subsection 143B-426.50(1), as required by the General Assembly. Claimant ultimately appealed the Commission's decision to the Court of Appeals on the basis that denial of her claim pursuant to 143B-426.50(1) was unconstitutional—a question of law outside the scope of the Commission's limited judicial authority but within the purview of the General Court of Justice. Furthermore, subsection 1-267.1(a1) does not modify the Court of Appeals' jurisdiction to review decisions of the Commission on "matters of law or legal inference" pursuant to section 7A-26, final decisions of the Commission pursuant to section 7A-29, or final decisions of the full Commission regarding eligibility for the Compensation Program pursuant to subsection 143B-426.53(f). Consequently, we hold that claimant's appeal based on a constitutional challenge was properly before

the Court of Appeals and that the Court of Appeals has appellate jurisdiction over claimant's appeal. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court to consider the merits of claimant's constitutional challenge to subsection 143B-426.50(1).

REVERSED AND REMANDED.