***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of Deputy Commissioner Rideout.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. Employee is Rosemary Gutierrez.
3. Employer is Coast Personnel Services.
4. The carrier on the risk at the time of the alleged injuries was AIU Holdings/New Hampshire Insurance Company, whose claims are administered by Chartis Insurance.
5. Defendant-Employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. An employer-employee relationship existed between the employer and the employee on May 6, 2009, the date of injury.
6. The parties originally stipulated that the average weekly wage would be determined from the Form 22. However, following the December 8, 2010 hearing before the Full Commission, the parties agreed to stipulate that Plaintiff's average weekly wage is $319.50, with a compensation rate of $213.00.
7. Employee has not worked from May 6, 2009 to the present and continuing.
8. Employer agrees to reimburse Medicaid for medical bills that Medicaid paid to Duke Raleigh Hospital, PDC and Raleigh Hand Center.
9. The following exhibits have been stipulated into evidence:
 a. Duke Raleigh Hospital, medical records.
 b. Raleigh Hand Center, medical records.
 c. Concentra, medical records.
 d. Raleigh Orthopaedic Clinic, medical records.
 e. Southeastern Orthopedics, medical records. *Page 3 
 f. Wellness One, medical records.
 g. Industrial Commission Form 18 (dated 6/2/09), Form 22 (dated 8/12/09), Form 24 (dated 7/21/09), Response (dated 8/6/09), Order denying Form 24 (dated 8/25/09), Form 24 (dated 11/11/09), Response (dated 11/30/09), Order denying Form 24 (dated 12/28/09), Form 33 (dated 2/17/10) Form 60 (dated 5/27/09), Form 60 (dated 8/13/09)
 h. Job search logs.
10. Any additional medical records that may become available before the close of evidence.
11. It is stipulated and agreed that opposing counsel has been furnished a copy of each exhibit identified.
 *********** EVIDENTIARY MATTERS
Plaintiff made an oral Motion to Receive Additional Evidence at the December 8, 2010 hearing before the Full Commission. Specifically, Plaintiff sought to have a letter dated March 12, 2010 from Alexis Bravo, Human Resources Administrator with Coast Personnel Services, Inc., to Plaintiff, admitted into the record. Defendants did not object to Plaintiff's Motion. The Full Commission hereby grants Plaintiff's Motion and hereby admits the letter of March 12, 2010 into the evidentiary record of this matter.
 *********** ISSUES
The issues in contention are:
 1. Whether the Form 24 was properly denied? *Page 4 
 2. Is Plaintiff's right shoulder injury compensable?
 3. Should Dr. Speer be designated as Plaintiff's authorized treating physician?
 4. What is Plaintiff's impairment rating?
 5. Did Plaintiff refuse suitable employment offered to her by Defendant?
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on March 5, 1973 in San Antonio, Texas. She has lived in North Carolina since she was nine years old. Plaintiff completed 10 years of primary education and does not have a G.E.D. Prior to working for Defendant-Employer, Plaintiff was employed as a machine operator and packer.
2. Plaintiff began working for Defendant-Employer on March 30, 2009. Defendant-Employer, a temporary agency, placed Plaintiff at the ConAgra plant in Garner, North Carolina as a packer. The packer position involved packing Slim Jims into boxes in a repetitive manner while standing at a conveyor belt, and required lifting more than five to ten pounds. Plaintiff was paid at the rate of $11.00 per hour, and prior to her accident, ConAgra offered Plaintiff a permanent position paying $14.00 per hour.
3. On May 6, 2009, Plaintiff slipped on a wet floor and fell, landing on her right shoulder and arm. She reported the accident and injury to her night manager.
4. Plaintiff went to the emergency room at Duke Raleigh Hospital on May 7, 2009. Plaintiff informed the doctor that she had injured her right arm, and complained of right elbow *Page 5 
and right shoulder pain. An x-ray revealed a right displaced radial head fracture and right elbow effusion. The doctor gave Plaintiff a work note for light duty work until May 12, 2009.
5. Defendants accepted Plaintiff's right elbow fracture claim as compensable on May 27, 2009 with the filing of a Form 60.
6. Defendants authorized Dr. Scott Wein of Raleigh Orthopaedic Clinic to treat Plaintiff. Plaintiff met with Dr. Wein on July 2, 2009, at which time she reported right elbow and right shoulder pain involving her entire arm. Dr. Wein diagnosed healed radial neck fracture with some component of myofascial pain. Dr. Wein did not have anything to offer Plaintiff from a surgical standpoint. He informed Plaintiff that she could meet with her primary care physician for treatment of her multifocal pain, and he recommended a course of therapy for stretching and conditioning exercises. Dr. Wein did not anticipate seeing Plaintiff again following July 2, 2009, and he released her to return to work with no restrictions. Dr. Wein testified that he, "probably didn't have a full understanding as far as how much heavy lifting there was" in Plaintiff's job for Defendants.
7. Plaintiff, who is right handed, did not think she could return to full duty work because her elbow and shoulder continued to cause her pain. Nonetheless, she called Sonya Hopson, Defendant-Employer's Office Manager, to see if they had any work for her through ConAgra. There was no work available for Plaintiff at ConAgra due to an explosion at their plant.
8. Thereafter, Plaintiff began to search diligently for work. Plaintiff recorded some, but not all, of her job search efforts on job search forms.
9. On July 29, 2009, Plaintiff met Dr. Kevin Speer of Southeastern Orthopedics for a second opinion. She related to him the history of her injury and the complaints of right elbow *Page 6 
and arm pain. Plaintiff's active and passive range of motion was not normal. Her radial head was very tender, and there was some lateral elbow crepitus. Regarding Plaintiff's lateral shoulder pain, Dr. Speer found a positive impingement sign. Dr. Speer diagnosed Plaintiff with persistent elbow pain, which he opined was probably due to the intraarticular nature of the fracture, its displacement, and some stiffness. Due to the continued displacement of her elbow, Plaintiff may experience persistent symptoms.
10. Dr. Speer also diagnosed Plaintiff with rotator cuff tendinopathy with impingement and bursitis. He recommended additional physical therapy to address both injuries. Dr. Speer assigned permanent restrictions of no lifting greater than five pounds, no pushing or pulling greater than five pounds and no repetitive activities, and assigned a five percent rating to Plaintiff's right arm.
11. On August 17, 2009, Plaintiff returned to Dr. Wein. On that date Plaintiff reported increased pain and shoulder problems. Dr. Wein diagnosed Plaintiff with right elbow medial epicondylitis and myofascial pain of the right upper extremity. He gave her a cortisone injection and a counter brace. Dr. Wein also prescribed an anti-inflammatory medication and gave Plaintiff a ten pound weight restriction with no repetitive gripping or pulling.
12. On September 14, 2009, Plaintiff saw a physical therapist who subsequently reported to Dr. Wein that, while Plaintiff had no further complaint of pain, she was still having some right hand weakness. Additionally, Plaintiff had not met the short term goal of increasing her right gross grip strength to fifty pounds, or the long term goal of being able to perform her work tasks using her right upper extremity.
13. Plaintiff saw Dr. Wein for the last time on September 21, 2009 at which time she reported experiencing mild diffused aching and throbbing pain in her elbow and shoulder, as *Page 7 
well as numbness and tingling. Plaintiff had experienced an increase in pain since the time of her discharge from therapy the previous week. Dr. Wein diagnosed Plaintiff with myofascial pain. He stated that she could return to work and assigned a two percent rating to Plaintiff's right arm.
14. Thereafter, Plaintiff continued to experience difficulty cleaning her house, hanging clothes, lifting her baby, gripping items, and performing repetitive tasks. Plaintiff experiences pain in her shoulder and elbow every day.
15. In August 2009, Plaintiff again contacted Defendant-Employer about potential jobs. Ms. Hopson confirmed that it was Plaintiff who called about these potential jobs. Plaintiff was offered a position as a linen sorter. No job description for this position was ever provided. The position was in Durham, North Carolina at a facility that is located 29 miles one way from her home at 5004 Kyle Drive in Raleigh, North Carolina. Plaintiff's former job at ConAgra was located only 12 miles from her home. The linen sorter position paid $8.00 per hour, whereas Plaintiff earned $11.00 per hour at ConAgra. Ms. Hopson acknowledged that the job would not have been within Plaintiff's restrictions as Plaintiff would have been required to perform the repetitive task of folding linen continuously all day. Plaintiff rejected the linen sorter job due to the long distance from her residence, the pay rate, and due to the fact that it was outside of her restrictions.
16. Based upon a preponderance of the evidence, the Full Commission finds that the linen sorter position was not suitable employment, and Plaintiff was reasonably justified in refusing it.
17. Plaintiff has continued to look for work without success. *Page 8 
18. On March 12, 2010, one week before the hearing before the Deputy Commissioner, Plaintiff received a letter which offered her a clerical position with Defendant-Employer. The job required answering phones, performing data entry and filing, and cleaning Defendant-Employer's office. While the letter from Defendant-Employer did not indicate what the rate of pay would be for the position with Defendant-Employer, at the hearing before the Deputy Commissioner it was determined to be $10.00 per hour.
19. Coast Personnel Services' office is located in Durham, North Carolina, and Plaintiff now resides in Wendell, North Carolina. The round trip distance between Defendant-Employer's office and Plaintiff's residence would therefore be approximately 70 miles. Plaintiff does not have any receptionist or data entry work experience, and does not possess the requisite computer skills for those positions. Furthermore, the data entry work required by the clerical position would violate Dr. Speer's restrictions of no repetitive activity. Plaintiff rejected the clerical position due to the long distance from her residence and the pay rate, her lack of experience, and due to the fact that one of the job duties involved in the position was outside of her restrictions.
20. Ms. Hopson testified that there was only one clerical position available with Defendant-Employer, and this was the position being offered to the Plaintiff. However, on March 17, 2010, five days after offering the position to Plaintiff, Defendant-Employer offered another injured employee the same position. In addition, Ms. Hopson did not know whether the position has ever been advertised. Based on the foregoing, the Full Commission finds as a fact that the clerical position with Coast Personnel Services offered to Plaintiff is not a real position, but rather, was created by Defendant-Employer to make it appear as though Plaintiff refused suitable employment. *Page 9 
21. Based upon a preponderance of the evidence, the Full Commission finds that the clerical position was not suitable employment, and Plaintiff was reasonably justified in refusing it.
22. Plaintiff saw Dr. Speer for the last time on March 25, 2010. Dr. Speer's examination on that date revealed that Plaintiff's condition was unchanged from her previous appointment, and his recommendations and conclusions regarding her impairment rating, permanent restrictions, and treatment recommendations remained the same. Plaintiff had a good relationship with Dr. Speer.
23. Based on a preponderance of the evidence, the Full Commission finds that the work accident of May 6, 2009 caused Plaintiff's right shoulder injury and her right elbow fracture.
24. Dr. Wein is an expert in orthopaedic surgery. Dr. Wein is not familiar with, and did not use the Industrial Commission's Guidelines in assigning a two percent rating to Plaintiff's right arm.
25. Dr. Speer is also an expert in orthopaedic surgery. Dr. Speer did use the Industrial Commission Guidelines in assigning a five percent rating to her Plaintiff's right arm.
26. Based on a preponderance of the evidence, the Full Commission finds that Dr. Speer's testimony on the issue of Plaintiff's disability rating is more credible than that of Dr. Wein's. While it is true that Dr. Wein was Plaintiff's authorized treating physician, he saw her only one more time than Dr. Speer, and Dr. Speer's examination findings were more extensive with regard to the basis for his disability rating opinion. Accordingly, the Full Commission finds that Plaintiff has a five percent disability rating to her right arm. *Page 10 
27. Dr. Wein opined that it was reasonable to assign a lifting restriction to Plaintiff as she had not met all of her therapy goals, and was still reporting pain. Dr. Wein further opined that Plaintiff could return to work as tolerated at the very least.
28. Dr. Speer assigned permanent restrictions of no lifting greater than five pounds, no pushing or pulling greater than five pounds, and no repetitive activities. He opined that Plaintiff's shoulder and elbow would not withstand unlimited work.
29. Based on a preponderance of the evidence, the Full Commission finds that Dr. Speer's testimony on the issue of permanent restrictions is more credible than that of Dr. Wein, even though Dr. Wein ultimately agreed that Plaintiff should have a lifting restriction. This is because Dr. Speer provided more detail regarding the basis for Plaintiff's restrictions than Dr. Wein. Accordingly, the Full Commission finds that Plaintiff has permanent restrictions of no lifting greater than five pounds, no pushing or pulling greater than five pounds, and no repetitive activities.
30. Dr. Wein agreed with Dr. Speer's diagnosis of right rotator cuff tendinopathy and bursitis. He stated that therapy would be the first course of treatment for that condition.
31. Plaintiff requires additional therapy, and may also require cortisone injections.
32. Plaintiff made a timely request for a change of physician to Dr. Kevin Speer on February 16, 2010.
33. Dr. Wein stated that he does not typically treat shoulder conditions.
34. Plaintiff has met her burden to have her treatment transferred to Dr. Speer.
35. Plaintiff has produced evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment.
36. Plaintiff has conducted an extensive job search for suitable employment. *Page 11 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On May 6, 2009, Plaintiff sustained a compensable injury by accident to her right shoulder when she slipped on a wet floor and fell. N.C. Gen. Stat. § 97-2(6).
2. Medical testimony supporting a causal relationship between an accident and the development of a medical condition must not be purely speculative and must be based in sound medical science.Young v. Hickory Business Furniture,353 N.C. 227, 230-31, 538 S.E.2d 912, 915-16 (2000). "Although the employment-related accident `need not be the sole causative force to render an injury compensable,' Hansel v. Sherman Textiles,304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981), the plaintiff must prove that the accident was a causal factor by a `preponderance of the evidence.'" Holley v. ACTS, Inc.,357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003) (quotingBallenger v. ITT Grinnell Industrial Piping,320 N.C. 155, 158-59, 357 S.E.2d 683, 685 (1987)). In the instant case, the medical evidence and testimony supports a finding that Plaintiff suffered a compensable injury by accident to her right shoulder on May 6, 2009. This includes the testimony of Drs. Wein and Speer that Plaintiff's right shoulder injury was more likely than not the result of the work accident of May 6, 2009.
3. Plaintiff has a five percent disability rating to her right arm. N.C. Gen. Stat. § 97-31.
4. An employee is entitled to select a physician of his own choosing subject to approval by the Industrial Commission. N.C. Gen. Stat. § 97-25. The Industrial Commission may give approval retroactively, provided the claimant obtains approval within a reasonable time *Page 12 
after procuring the services of the physician, and if the treatment sought is to effectuate a cure, give relief, or lessen the period of disability. Schofield v. Atlantic Pacific Tea Co.,299 N.C. 528, 264 S.E.2d 56 (1980); Charlotte-Mecklenburg HospitalAuthority v. N.C. Industrial Commission,336 N.C. 200, 443 S.E.2d 716 (1994). Here, the evidence shows that (1) Dr. Wein does not treat shoulders, (2) Dr. Speer has offered treatment that might effectuate a cure, give relief, or lessen the period of disability, (3) Plaintiff has a good relationship with Dr. Speer, and (4) Plaintiff would like Dr. Speer to take over her care to see if he can lessen the pain she is experiencing. Accordingly, Dr. Speer shall be Plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
5. Neither the linen sorter position, nor the clerical assistant position, is suitable employment for Plaintiff. Peoples v. ConeMills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986). Plaintiff was reasonably justified in rejecting these jobs.
6. Plaintiff is capable of some work, but she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment. Russell v. Lowes Product Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
7. Defendant-employer has the burden of establishing a basis for termination or suspension of compensation. N.C. Gen. Stat. § 97-18.1. In the instant case, Defendants have not carried their burden of proof. As such, the Form 24 was properly denied. N.C. Gen. Stat. § 97-18.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD *Page 13 
1. Defendants shall continue to pay Plaintiff temporary total disability compensation, but now at the stipulated rate of $213.00 per week, until further order of the Industrial Commission. Any arrearage for underpayment shall be paid in a lump sum to Plaintiff. This award is subject to the attorney's fee set out below.
2. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her compensable injuries by accident to her right shoulder and right elbow. Dr. Speer is designated as Plaintiff's authorized treating physician. The treatment is authorized for so long as such examinations, evaluations and treatments are reasonably required to effect a cure, give relief or tend to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Defendants shall pay directly to Plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded to Plaintiff herein. Fees based upon compensation that has accrued shall be paid to Plaintiff's counsel in a lump sum; thereafter, Plaintiff's counsel shall receive every fourth check for indemnity compensation owed to Plaintiff.
4. Defendants shall pay the costs to the Commission.
This the 21st day of January, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE BALLANCE COMMISSIONER
 S/_____________ STACI T. MEYER COMMISSIONER *Page 1